PATEL & ALMEIDA, P.C.
ALEX D. PATEL (State Bar No. 201875)
alex@patelalmeida.com
PAULO A. DE ALMEIDA (State Bar No.279168)
paulo@patelalmeida.com
16830 Ventura Blvd., Suite 360
Encino, CA  91436
Telephone: 818.380.1900

ADLER LAW GROUP
ERWIN E. ADLER (State Bar No. 040638)
eadler@adlerlawgroup.com
350 S. Figueroa, Suite 557
Los Angeles, CA. 90071
Telephone 213.893.3900
Fax 213.893.3910

Attorneys for Defendant and Counterclaimant,
VERONICA'S SERVICES, INC.

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| VERONICA'S AUTO INSURANCE SERVICES, INC., a California Corporation,<br><br>Plaintiff,<br><br>v.<br><br>VERONICA'S SERVICES, INC., a California corporation,<br><br>Defendant.<br>_____<br>VERONICA'S SERVICES, INC., a California corporation,<br><br>Counterclaimant,<br><br>v.<br><br>VERONICA'S AUTO INSURANCE SERVICES, INC., et al.,<br><br>Counter-Defendants. | Case No. EDCV13-1327 DDP (DTBx)<br><br>*Assigned to Courtroom 3*<br>*The Hon. Dean D. Pregerson*<br><br>**REPLY BRIEF IN SUPPORT OF DEFENDANT VERONICA'S SERVICES, INC.'S MOTION FOR PARTIAL SUMMARY JUDGMENT**<br><br>DATE:     October 20, 2014<br>TIME:      10:00 a.m.<br>JUDGE:   Hon. Dean D. Pregerson<br>PLACE:  Courtroom 3<br><br>[*Filed concurrently with Supplemental Declaration of Jimmy Silva, Supplemental Declaration of Paulo A. de Almeida, and Evidentiary Objections*] |

# TABLE OF CONTENTS

Page

I.      INTRODUCTION ......................................................................... 1

II.     THIS COURT SHOULD REJECT VAIS' SURPRISE THEORY OF
        "UNLAWFUL USE IN COMMERCE" ......................................... 3

        1.   "Unlawful Use in Commerce" is an Unpled Issue ................................ 4

        2.   VAIS Never Disclosed "Unlawful Use in Commerce" in
        Discovery ........................................................................... 5

        3.   The McCarran-Ferguson Act Precludes This Court from Indirectly
        Enforcing the California Insurance Code and Regulations ............................ 7

III.    VERONICA'S USE WAS LAWFUL ........................................ 14

        1.   VAIS Has Not Shown a "Per Se" Violation of Cal. Ins. Code §
        1724.5 or 10 CCR § 2052.4 ........................................................ 15

        2.   VAIS Has Not Shown a "Per Se" Violation of Cal. Ins. Code §§
        1725.5 or 1726 ......................................................... 16

        3.   VAIS Has Not Shown a "Per Se" Violation of Cal. Ins. Code §
        1631 ................................................................ 17

        4.   There is No "Nexus"; Technical Non-compliance Was Immaterial ...... 18

IV.     VERONICA'S WAS THE FIRST TO USE THE MARK ........................... 19

V.      VERONICA'S MARK IS DISTINCTIVE AND PROTECTABLE............. 21

VI.     THERE IS A LIKELIHOOD OF CONFUSION ........................................ 23

VII.    PRIORITY OF USE CONTROLS ALL OTHER ISSUES ......................... 24

VIII.   CONCLUSION ............................................................. 25

1

# <u>TABLE OF AUTHORITIES</u>

2

## FEDERAL CASES

3

*Addrisi v. Equitable Assur. Soc. of the United States*, 503 F.2d 725 (9th Cir.

4
1974) ..........................................................................................................9

5

*Bell Atlantic Corp. v. Twombly,* 550 US 554 (2007) ...........................................4, 5

6

*Chance v. Pac–Tel Teletrac Inc.*, 242 F.3d 1151 (9th Cir. 2001) ........................22

7

*CreAgri, Inc. v. USANA Health Sciences, Inc*., 474 F.3d 626 (9th Cir. 2007)...........

8
.................................................................................................14, 18, 19

9

*Crusader Ins. Co. v. Scottsdale Ins. Co.,* 54 Cal.App.4th 121 (1997) ............11, 12

10

*Dent v. Siegelbaum*, 2012 WL 718835 (D. Md. 2012) ........................................6

11

*FTC v. National Casualty Co*. 357 U.S. 560 (1958) ........................................9, 10

12

*Emergency One, Inc. v. Am. Fire Eagle Engine Co*., 332 F.3d 264 (4th Cir.

13
2003) ........................................................................................................20

14

*Galloway v. Islands Mechanical Contractor, Inc.*, 2013 WL 163985 (D. V.I.

15
2013) ..........................................................................................................6

16

*General Mills Inc. v. Health Valley Foods*, 24 U.S.P.Q.2d 1270 (TTAB

17
1992) .....................................................................................................15, 18

18

*Huber v. Barger*, 25 Cal.App.3d 1092 (1972) ...........................................12, 13, 15

19

*Humana Inc. v. Forsyth,* 525 U.S. 299 (1999) ...............................................8, 13

20

*Marvin Lumber and Cedar Co. v. PPG Industries, Inc*. 177 F.R.D. 443 (D.

21
Minn. 1997) ...............................................................................................6

22

*Nissan Motor Co. v. Nissan Computer Corp.*, 378 F.3d 1002 (9th Cir.2004) ......23

23

*Northwestern Corp. v. Gabriel Manufacturing Co. Inc.*, 48 U.S.P.Q.2d 1902,

24
1998 U.S. Dist. LEXIS 12763, 28 (N.D. Ill. 1998) .....................................19

25

*Quelimane Co. v. Stewart Title Guaranty Co*., 19 Cal. 4th 26 (1998) ..................11

26

*Satinine Societa in Nome Collettivo Di S.A. E M. Usellini v. P.A.B. Produits

27
et Appareils de Beaute*, 209 U.S.P.Q. 958 (TTAB 1981) ......................14, 15

28

*Southern California Darts Ass'n v. Zaffina*, -- F.3d. --- 2014 WL 3893093,

(9th Cir. 2014) ............................................................. 15

*State Inv. & Ins. Co. v. Superior Court of San Francisco*, 101 Cal. 135
(1894) ....................................................................... 11

*Transgo, Inc. v. Ajac Transmission Parts Corp.*, 768 F.2d 1001 (9th Cir.
1985) ......................................................................... 22

*United States v. South-Eastern Underwriters Ass'n*, 322 U.S. 533 (1944) .......... 7, 9

*Vision Sports, Inc. v. Melville Corp.*, 888 F.2d 609 (9th Cir. 1989) ..................... 22

*Western Worldwide Enters. Group Inc. v. Qinqdao Brewery,* 17 USPQ2d
1137 (TTAB 1990) ....................................................... 14, 15

*3SEC v. National Securities Inc*, 393 U.S. 453 (1969) ............................... 9

## FEDERAL STATUTES

Fed.R.Civ.P. 26 ............................................................... 5, 6

15 U.S.C. § 1011 et seq. .................................................... 3, 8-14

15 U.S.C. § 45 .................................................................... 9

## STATE STATUTES

*Cal. Ins. Code § 1724.5* .............................................. 3, 12, 15, 16

*Cal Ins. Code § 1725.5* ................................................. 4, 12, 16

*Cal Ins. Code § 1631* ..................................................... 4, 17

*Cal Ins. Code § 1726* .................................................... 4, 12, 16

10 CCR § 2052.4 ...................................................... 4, 12, 15, 16

10 CCR § 2052.4(c) ................................................... 4, 12, 15, 16

REPLY IN SUPPORT OF VERONICA'S SERVICES, INC.'S MOTION FOR PARTIAL SUMMARY JUDGMENT

Defendant-Counterclaimant, VERONICA'S SERVICES, INC. ("Veronica's") submits this reply brief in support of its motion for partial summary judgment.

## I.    INTRODUCTION

Since the legal rule governing trademarks is *first-in-time, first-in-right*, the factual issue is narrow: *who first used the "Veronica's" mark to sell auto insurance*? Plaintiff VAIS admitted during deposition – and admits in its Opposition brief – it first used "VERONICA'S INSURANCE" to sell insurance in **2011** – six years after Veronica's started using the mark in **2005.** Indisputably, Veronica's was first.

VAIS, realizing it must lose the priority issue, turns to obfuscation.  It thus raises a new, un-pled theory: Veronica's engaged in "unlawful use in commerce" by allegedly violating the Insurance Code and regulations, And VAIS tries to distract this Court with irrelevant facts about the personal background of VAIS' CEO, Laura Veronica Gallardo ("Gallardo"), and her formation of VAIS, which used a *different* trademark "ADRIANA'S INSURANCE" to sell auto insurance before 2011.  These facts cannot detract from Veronica's undisputedly earlier use of the mark in 2005.

VAIS began this lawsuit by misrepresenting in its complaint it "first used" the Veronica's mark for auto insurance in 2007.  After a burdensome and very expensive discovery phase – requiring Veronica's to move to compel Gallardo to attend *her own* deposition – she finally admitted VAIS had never used that mark for insurance until she opened her first office in Santa Monica in about ***2011***:

> "[Veronica's counsel:] At what location did you first start offering auto I
> insurance services using the mark Veronica's Services?
> [Gallardo:] Which location? I believe Santa Monica. . . .
> Q    Okay. When did you open the Santa Monica office?
> A    I don't remember.
> Q    Do you remember the approximate year?

A     I want to guess 2011."[1]

Further, her company never used the mark before 2010:

> Q     Did your company use the trademark Veronica's Insurance to sell auto insurance prior to 2010?
> *          *          *
> THE WITNESS: No."[2]

Nor contrary to the allegation in the complaint did she use "VERONICA'S INSURANCE" to sell auto insurance services in 2007:

> Q     In 2007, was Veronica's Auto Insurance Services, Incorporated, selling insurance using the service mark Veronica's Insurance?
> *          *          *
> THE WITNESS: No.[3]

Further, she conceded falsely denying a request for admission which sought to confirm she had first used "Veronica's" *after* 2007:

> Q     Okay. And if you can read the next request, Number 8. Read -- just read line 6 out loud. . . .
>
> A     "Admit that your first use of the subject mark was later than 2007."
>
> Q     Okay. If you can read number line 14 the response to that request out loud.
>
> A     "Denied."
>
> Q     Did you use the mark Veronica's Services to sell auto insurance in 2007?
>
> A     No.[4]

After VAIS' misrepresentation was uncovered and VAIS realized its false allegation would cause it to lose this suit, VAIS switched gears.  It discharged its original counsel and hired a larger law firm to pursue a new, unpled theory: that

---

[1] Gallardo Depo, 46:2-6; 47:8-12, Supplemental Declaration of Paulo A. de Almeida ("de Almeida Supp. Decl."), Ex. A.
[2] *Id.*, 107:7-11.
[3] *Id.*, 29:16-21
[4] *Id.*, 176:8-16

2

1  Veronica's had engaged in "unlawful use in commerce" by possibly committing
2  technical violations of California Insurance Code and DOI regulations.  VAIS thus
3  demands this Court—through the Lanham Act—enforce the California Code and
4  regulations which govern advertising by insurance licensees.  For over a half-
5  century, it has been settled however that the *McCarran-Ferguson Act,* 15 U.S.C. §§
6  1011-1015, precludes federal regulation of advertising by DOI licensees.  Had
7  VAIS timely raised the issue, this Court would have been required to resolve it
8  earlier against VAIS.  That is so because the McCarran-Ferguson Act bars any
9  federal interference with the advertising by those in the "business of insurance."

10      Besides the total absence of legal merit to VAIS' new theory – that this court
11  should bar Veronica's from using its own trademark based on alleged violations of
12  the Insurance Code and regulations – VAIS raises that contention belatedly.  It
13  never pled any such theory nor raised that theory during discovery.  Further, VAIS
14  never produced any discovery on that theory (and even affirmatively represented no
15  such issue was in the case).  Instead, VAIS first raised that theory *after the close of*
16  *discovery*, i.e., on August 21, 2014 at the "meet and confer" before this motion was
17  filed.[5]   Thus, Veronica's pending motion focuses on priority of use.  This Court
18  should neither tolerate VAIS' pleading of a false 2007 "first use" date nor its belated
19  attempt to raise an unpled "unlawful use in commerce" theory directly conflicting
20  with the McCarran-Ferguson Act.  Based on Veronica's superior right to the mark
21  because it used the mark first, this Court should grant the pending motion.

## II.   THIS COURT SHOULD REJECT VAIS' SURPRISE THEORY OF "UNLAWFUL USE IN COMMERCE"

25      The focus of VAIS' opposition is its theory Veronica's engaged in "unlawful
26  use in commerce" by allegedly violating California Insurance Code §§ 1724.5,
27  1725.5, 1726, 1631, and 10 CCR § 2052.4.  That contention, besides being legally

---

[5] de Almeida Supp. Decl., ¶ 4.

REPLY IN SUPPORT OF VERONICA'S SERVICES, INC.'S MOTION FOR PARTIAL SUMMARY JUDGMENT

1   meritless, is irrelevant since VAIS never pled it in its complaint nor disclosed it in
2   discovery.  At bottom, VAIS has not (and cannot) cannot create any genuine
3   dispute of material fact as to Veronica's prior and superior rights in the mark.

### 1.  "Unlawful Use in Commerce" Is an Unpled Issue

5          VAIS, in its complaint and its answer, failed to plead any violation of the
6   Insurance Code.  Nor did VAIS refer to "unlawful use in commerce." Although
7   VAIS' used the legal conclusion "unlawful" to refer to "confusion," "irreparable
8   harm," "economic loss," and "loss of good will," that term relates merely to
9   *infringement*, not violations of the Insurance Code or regulations:

> "13. On information and belief, defendant's <u>unlawful use</u> of
> VERONICA'S SERVICES trademark has caused <u>actual confusion</u>
> amongst consumers and initial interest confusion as to the origin of
> their respective products and services . . . .

> 21. By reason of the foregoing <u>unlawful</u> acts recited in paragraphs, [*sic*]
> plaintiff has been <u>irreparably harmed</u> and will continue to suffer
> damage . . . .

> 17. Plaintiff has been <u>irreparably harmed</u> and has suffered <u>economic
> loss</u> as well as the <u>loss of good will</u> from defendant's unlawful and
> willful acts . . . ."[6]

Boilerplate allegations of trademark infringement do not give fair notice to a party
that it is also being charged with "unlawful use in commerce" based on violations
of the Insurance Code.  As the Supreme Court explained, "Without some factual
allegation in the complaint, it is hard to see how a claimant could satisfy the
requirement of providing not only 'fair notice' of the nature of the claim, but also
'grounds' on which the claim rests."[7]

         Paragraph 12 of the Complaint – alleging "defendant did not become licensed
to provide insurance in California under the name VERONICA'S SERVICES, INC.

---

[6] Complaint, ¶¶ 13, 21, 17.
[7] *See Bell Atlantic Corp. v. Twombly,*  550 US 554, 556, fn. 3.

REPLY IN SUPPORT OF VERONICA'S SERVICES, INC.'S MOTION FOR PARTIAL SUMMARY JUDGMENT

until March 10, 2009" – does not constitute the required "factual allegation in that complaint" (*id.*)  alleging Veronica's had committed "per se" regulatory violations.  The Supreme Court has also indicated as to pleadings, "Asking for plausible grounds does not impose a probability requirement at the pleading stage; it simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence [to support plaintiff's claims].").[8]  VAIS' boilerplate affirmative defenses of "unclean hands" and "invalidity" also fail to provide fair notice of such a claim; such "defenses" are legal conclusions, devoid of factual allegations.  Simply put, since VAIS' <u>never pled any Insurance Code violations, it never gave Veronica's fair notice of its newly-minted theory.</u>  VAIS cannot now raise it for the first time.

### 2.  VAIS never disclosed "Unlawful Use in Commerce" in Discovery

On December 5, 2013, the parties held their Rule 26 discovery conference; however, neither "unlawful use in commerce" nor Insurance Code violations was discussed.[9]  Thus neither the Rule 26 Joint Report nor VAIS' Rule 26 Initial Disclosures refers to that issue.[10]

Later, when Veronica's requested VAIS to produce all documents related to its vague allegations of "unlawful use", "unclean hands, and "invalidity,"[11] VAIS failed to produce any documents.  Rather, based on relevancy, it objected, asserting: "**it [, i.e., the RFP] inquires into matters that go beyond what is relevant to the parties' claims or defenses**.  Although VAIS also represented it would produce all documents,[12] it never produced a single document.[13]

To confirm VAIS' failure to produce documents, Veronica's wrote to VAIS' prior counsel on April 21, 2014, demanding production of documents related to

---

[8] *Bell Atl. Corp. v. Twombly*, *supra*, 550 U.S. at 545.
[9] de Almeida Supp. Decl., ¶ 5.
[10] *Id.,* Exs. B, C (Joint Report (filed) and VAIS' Initial Disclosures).
[11] de Almeida Supp. Decl., ¶ 6, Ex D (Document Requests Nos. 48, 56, 59)
[12] de Almeida Supp. Decl, ¶ 7, Ex. E (VAIS' Responses, Nos. 48, 56, 59).
[13] *Id.*

1  "unlawful use", "unclean hands" and "invalidity".[14]  During a subsequent telephonic

2  "meet and confer," Veronica's renewed its demand for documents responsive to

3  requests nos. 48, 56, and 59.  In response, VAIS' counsel flatly stated "**we don't**

4  **have any,**" a statement Veronica's counsel confirmed in an email, stating: "You

5  stated that Counter-defendants do not have documents responsive to these requests

6  [Nos. 48, 56, and 59]."[15]  Because no documents existed, Veronica's assumed VAIS

7  had abandoned its contentions of "unlawful use", "unclean hands" and "invalidity."

8       After discovery closed on July 31, 2014, VAIS never updated its Initial

9  Disclosures with any contention regarding "unlawful use in commerce".  However,

10  on September 8, 2014 – *the day before Veronica's filed this Motion* – VAIS served

11  a "supplemental" disclosure which included documents relating to Veronica's and

12  Jaime Silva's broker's license applications with the DOI.[16]  VAIS surreptitiously

13  and improperly obtained those documents by serving a post-discovery-cutoff

14  subpoena to the DOI on August 25, 2014.

15       Veronica's, relying on this Court's discovery cutoff date, prepared the

16  pending Motion based on documents VAIS produced during discovery.  It thus

17  objected to VAIS' untimely subpoena, stating: "We object to the subpoena . . . ."[17]

18  Despite that objection, VAIS based its Opposition on that unpled Insurance Code

19  theory and submitted various surprise documents.  And on September 10, 2014, *the*

20  *day after Veronica's filed this motion*, VAIS served the "expert report" of David

21  Fortman which, for the first time, discussed alleged regulatory violations.

22

23     [14] *Id.*, ¶ 8, Ex. F, at p. 10.

      [15] *Id.*, ¶ 9, Ex. G.

24     [16] *Id.*, ¶ 10, Ex. H.

      [17] *Id.*, ¶ 11, Ex. I.  The objection also set forth legal authority precluding that maneuver

25  such as *Marvin Lumber and Cedar Co. v. PPG Industries, Inc*. 177 F.R.D. 443 (D. Minn. 1997)

26  (Rule 45 subpoenas are subject to the same time constraints that apply to all of the other methods

    of formal discovery).  Some courts have allowed Rule 45 subpoenas after the close of discovery,

27  but this is the minority view.  *See Galloway v. Islands Mechanical Contractor, Inc.*, 2013 WL

    163985 (D. V.I. 2013); *Dent v. Siegelbaum*, 2012 WL 718835 (D. Md. 2012).

28

REPLY IN SUPPORT OF VERONICA'S SERVICES, INC.'S MOTION FOR PARTIAL SUMMARY JUDGMENT

VAIS' failures to comply with basic pleading and discovery rules constitute unfair surprise and severely prejudice Veronica's.  And furthermore, VAIS had affirmatively represented during discovery – while indicating it had no documents – that "unlawful use in commerce" was not an issue.  A brief reference to "unlawful use" during the deposition of Jaime Silva – without specific reference to any Insurance Code violations – was VAIS' sole concession to complying with its pleading and discovery obligations.  That is plainly insufficient.

On the foregoing basis, the Court should reject VAIS' surprise contention as to "unlawful use in commerce" and find that Veronica's has superior rights.

### 3.  The McCarran-Ferguson Act Precludes This Court From Indirectly Enforcing the California Insurance Code and DOI Regulations

VAIS, with its new-found theory, disregards a basic principle: under the McCarran-Ferguson Act, only the California Department of Insurance can regulate Veronica's advertising.  Absent specific language in a federal statute indicating it applies to insurance, every such statute affecting the "business of insurance" is "reverse-preempted" in favor of state legislation.  VAIS, however, ignores that Act.

The history of the McCarran-Ferguson Act (15 U.S.C. § 1011 et seq.) is uncomplicated.  Congress passed the Act to overrule the Supreme Court's decision in *United States v. South-Eastern Underwriters Ass'n.*[18] Before *South-Eastern*, insurance was not considered to be in commerce and thus, not subject to federal regulation under the Commerce Clause.  In *South-Eastern*, the Supreme Court however held insurers conducting business across state lines were in interstate commerce and thus, subject to the Sherman Act. Within a year, Congress overruled that decision with the McCarran-Ferguson Act.  In sum, Congress indicated States

---

[18] *United States v. South-Eastern Underwriters Ass'n*, 322 U.S. 533 (1944).

would continue regulating the "business of insurance," thus "reverse-preempting" such federal legislation as the Lanham Act and Federal Trade Commission Act.

As the Supreme Court has explained, Congress passed the McCarran-Ferguson Act to "preclude[] application of a federal statute in face of state law 'enacted . . . for the purpose of regulating the business of insurance,' if the federal measure does not 'specifically relat[e] to the business of insurance,' and would 'invalidate, impair, or supercede' the State's law."[19] Although VAIS focuses on the Lanham Act, that statute was not specifically enacted to regulate advertising in the business of insurance.  In sum, the McCarran-Ferguson Act establishes reverse-preemption, i.e., any federal statute such as the Lanham Act does not displace State law.  Section 1 (15 U.S.C. § 1011) of the McCarran-Ferguson Act provides:

> "The Congress hereby declares that the continued regulation and taxation by the several States of the business of insurance is in the public interest, and that silence on the part of the Congress shall not be construed to impose any barrier to the regulation or taxation of such business by the several States."

Section 2 similarly codifies Congress' intent to vest jurisdiction in the states:

> "(a)  State regulation. The business of insurance, and every person engaged therein, shall be subject to the laws of the several States which relate to the regulation or taxation of such business.
> (b) Federal regulation. No Act of Congress shall be construed to invalidate, impair, or supersede any law enacted by any State for the purpose of regulating the business of insurance, or which imposes a fee or tax upon such business, unless such Act specifically relates to the business of insurance."

The McCarran-Ferguson Act vests jurisdiction over advertising by entities engaged in the "business of insurance" in the States, not the federal government.  Thus, legislation such as the Lanham Act and Federal Trade Commission Act – since they

---

[19] *Humana Inc. v. Forsyth,* 525 U.S. 299, 307 (1999) (citing Dep't of Treasury v. Fabe, 508 U.S. 491, 501 (1993).

8

do not "specifically regulat[e] the business of insurance" (*id.*) – are preempted in favor of State regulation.  As the Supreme Court has explained:

> "Insurance companies may do many things which are subject to paramount federal regulation; only when they are engaged in the 'business of insurance' does the statute apply.  Certainly the fixing of rates is part of this business; that is what *South-Eastern Underwriters* was all about.  The selling and advertising of policies, *FTC v. National Casualty Co.* 357 U.S. 560 [2 L. Ed. 2d 1540, 78 S. Ct. 1260] (1958), and the licensing of companies and their agents, cf. *Robertson v. California*, 328 U.S. 440 [90 L. Ed. 1366, 66 S. Ct. 1160], (1946), are also within the scope of the statute. . . . [W]hatever the exact scope of the statutory term, it is clear where the focus was – it was on the relationship between the insurance company and the policyholder. Statutes aimed at protecting or regulating this relationship, directly or indirectly, are laws regulating the 'business of insurance.'"[20]

The Ninth Circuit has expressly held California's scheme of regulating insurance through the DOI satisfies the McCarran-Ferguson Act.[21] VAIS however tries to convert this Court into a roving commission to enforce, through the Lanham Ac, Insurance Code and DOI regulations regarding advertising.  For a half-century, however, the Supreme Court has held McCarran-Ferguson precludes any such effort.  Not even the FTC – while authorized to "prohibit . . . [u]nfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce"[22] – can regulate advertising in the "business of insurance."  In *FTC v. National Casualty Co,*[23] the Supreme Court explained the McCarran-Ferguson Act bars the FTC from regulating advertising in the business of insurance:

> "An examination of that statute [i.e., the McCarran-Ferguson Act] and its legislative history establishes that the Act withdrew from the Federal Trade Commission the authority to regulate respondents' advertising

---

[20] *3SEC v. National Securities Inc*, 393 U.S. 453, 459-60 (1969).
[21] *Addrisi v. Equitable Assur. Soc. of the United States*, 503 F.2d 725, 728 (9th Cir. 1974), cert. denied, 420 U.S. 929 (1975).
[22] 15 U.S.C. § 45.
[23] *FTC v.National Casualty Co.* 357 U.S. 560 (1958)

9

practices in those States which are regulating those practices under their own laws."[24]

As the court also explained, under McCarran-Ferguson, the States have exclusive jurisdiction over advertising by those involved in the "business of insurance":

> "Respondents' advertising programs require distribution by their local agents, and there is no question but that the States possess ample means to regulate this advertising within their respective boundaries."[25]

VAIS fails to cite any legal authority holding it can import the Insurance Code and DOI regulations into the Lanham Act and thus, deprive Veronica's, the first user, of its trademark. Nor, as discussed below, VAIS could not do so since:

- First, as held in *FTC v. National Casualty* and its progeny, the States have exclusive jurisdiction to regulate advertising in the insurance business.
- Second, because Congress failed to specify in the Lanham Act it applies to the business of insurance, that Act does not do so.
- Third, the California Insurance Commissioner has exclusive jurisdiction to enforce the Insurance Code and DOI regulations regarding licenses and their advertising since no language in the Lanham Act specifies otherwise.

The Supreme Court has also explained the McCarran-Ferguson Act vests exclusive jurisdiction in the States to enforce insurance licensing. Thus in *SEC v. National Securities*, discussed above, it held "the licensing of companies and their agents, cf. *Robertson v. California*, 328 U.S. 440 [90 L. Ed. 1366, 66 S. Ct. 1160], (1946), are also within the scope of the statute, [i.e., McCarran-Ferguson]." In so holding, the court reiterated its conclusions in *Robertson*, and in *FTC v. National Casualty Co.*: reverse preemption applies to licensing and advertising of insurance licensees.

---

[24] *Id.*, at 562-563.
[25] *Id.* at 564 citing Robertson v. California, 328 U.S. 440, 445 (1946).

10

California, regulating insurance since 1868,[26] enacted an Insurance Code in 1935.  And the DOI has promulgated regulations which VAIS seeks to twist into a basis for seizing the mark.  Only the Commissioner of Insurance however can enforce the Code and regulations. Unlike some states, California precludes private claimants from basing a suit on the Insurance Code or DOI regulations.  For example, in *Crusader Ins. Co. v. Scottsdale Ins. Co.*,[27] the court rejected the effort of one insurance carrier, Crusader, to bypass DOI procedures and thus, directly sue other insurers and brokers based on purported violations of Insurance Code § 1763 and "publish[ed] reasonable rules and regulations."[28]  The trial court dismissed and the appellate court affirmed, explaining:

> The Legislature can have legitimate reasons for not creating a private right to sue for violation of a regulatory statute.  Entrusting enforcement of a regulatory statute solely to an administrator can serve at least three possible legislative objectives: expertise of enforcement, uniformity of enforcement, and avoidance of the burdens and possibly counterproductive effects that can be created when litigation is motivated by private objectives. . . . [R]esolution of such issues [as to whether to create a private cause of action 'involves a difficult weighing of competing policies. Such a determination is more properly made by the Legislature.' "[29]

Subsequently, the Supreme Court followed *Crusader* in holding litigants cannot bypass administrative procedures by suing on a statute or regulation, stating:

> "As one Court of Appeal wrote in dismissing a suit seeking 'court-created regulation of [insurance] brokers' (*Crusader Ins. Co. v. Scottsdale Ins. Co.* . . . '[i]nstitutional systems are . . . in place to deal with [the issue]. There is no need or justification for the courts to interfere . . . .' "[30]

---

[26] *State Inv. & Ins. Co. v. Superior Court of San Francisco*, 101 Cal. 135, 143-144 (1894) (reviewing history of regulation).
[27] 54 Cal.App.4th 121 (1997).
[28] *Id.,* at 124.
[29] *Id.,* at 134.
[30] *Quelimane Co. v. Stewart Title Guaranty Co.*, 19 Cal. 4th 26, 62-63 (1998).

11

If VAIS wants to enforce the Insurance Code or regulations governing licensing or advertising, it must bring its complaints to the DOI because that agency has exclusive jurisdiction to enforce them; under *Erie*, this court will follow that legal principle. And further, the McCarran-Ferguson Act precludes this Court from accepting VAIS' invitation to use the Lanham Act to invade the jurisdiction of the Insurance Commissioner and thus transfer the mark to VAIS. In short, VAIS repetitive *ex cathedra* pronouncements that Veronica's acted "unlawfully"[31] or committed a "violation"[32] (generally asserted to be "per se") are not enough. Notably, although VAIS subpoenaed the DOI's records, it fails to indicate (because it could not) that the Commissioner ever determined Veronica's acted improperly or assessed any penalty. Nonetheless, VAIS demands this Court assess a draconian penalty against Veronica's not contemplated in the Insurance Code or regulations, i.e., seizure of the trademark and transfer to VAIS.

Responding to VAIS' reference to the Insurance Code and regulations, we note Sections 1724.5, 1725.5, 1726 and 10 CCR § 2052.4 establish the DOI's exclusive jurisdiction over names and other advertising. Since the Commissioner has exclusive jurisdiction, no one can bypass that administrative framework. Thus, like *Crusader* – where the complaining party needed to exhaust its administrative remedies with the DOI – the court in *Huber v. Barger*[33] similarly held the administrative exhaustion rule applies to DOI jurisdiction over names:

> "Appellant had ample opportunity to exhaust her administrative remedies by requesting a departmental hearing, then had the names been administratively disapproved she would have been entitled to obtain judicial review in the superior court [citation]. Through her failure to exhaust her administrative remedies and obtain the agency's final determination on the merits, appellant

---

[31] Opposition Brief, at 6:3; 6:5; 6:8; 6:13; 8:11; 10:8; 10:10; 10:11; 10:12; 11:26; 12:2; 12:3; 12:5; 12:23; and 23:19.
[32] *Id.,* at 3:25; 6:4; 6:5; 6:16; 7:4, 7:12; 8:12; 9:24; 9:27; 10:5; 11:8; 11:9; 12:5; 12:24; 13:3; 13:19; 13:26; and 24:15.
[33] *Huber v. Barger*, 25 Cal.App.3d 1092 (1972).

12

REPLY IN SUPPORT OF VERONICA'S SERVICES, INC.'S MOTION FOR PARTIAL SUMMARY JUDGMENT

waived her right to a hearing in the superior court on respondent's disapproval of the [subject names]."[34]

In sum, despite VAIS, no one can bypass the Commissioner's exclusive jurisdiction over advertising. That is so whether, as in *Huber*, he renders a decision or instead, as in *Chaucer*, fails to do so. As *Huber* also indicates, that principle specifically applies to the DOI's approval or disapproval of names used by licensees.

At bottom, VAIS improperly seeks to upset the relationship between that administrative structure – vesting exclusive jurisdiction in the DOI to enforce the Code and DOI regulations – and the McCarran-Ferguson Act. Section 2(b) of that Act specifically precludes using any federal statute to "invalidate, impair, or supersede any law enacted by any State for the purpose of regulating the business of insurance." To allow VAIS to obtain the mark based on its "unlawful use" theory would render the Commissioner's jurisdiction nugatory and thus, "impair" or "supersede" state law. As the Supreme Court has explained:

> "The dictionary definition of 'impair' is 'to weaken, to make worse, to lessen in power, diminish, or relax, or otherwise affect in an injurious manner.' [citation]. The following formulation seems to us to capture that meaning and to construe, most sensibly, the text of § 2(b): When federal law does not directly conflict with state regulation, and when application of the federal law would not frustrate any declared state policy or interfere with a State's administrative regime, the McCarran-Ferguson Act does not preclude its application. [citation]"[35]

In sum, VAIS tries to use the Lanham Act to deprive Veronica's of its mark. In doing so, VAIS ignores the DOI's exclusive jurisdiction over insurance advertising and names. Were VAIS to obtain the trademark under the Lanham Act, that result would be in "conflict with state regulation" (*id.*) and "with a State's administrative regime" (*id.*); thus, that result would violate the McCarran-Ferguson Act.

---

[34] *Id.*, at 196-1097.
[35] *Humana Inc. v. Forsyth*, 525 U.S. 299, 309-310 (1999).

REPLY IN SUPPORT OF VERONICA'S SERVICES, INC.'S MOTION FOR PARTIAL SUMMARY JUDGMENT

## III.   VERONICA'S USE WAS LAWFUL

VAIS argues Veronica's has no right to the mark because it engaged in "per se" violations of the Insurance Code.  To support that theory, VAIS cites *CreAgri, Inc. v. USANA Health Sciences, Inc.*, 474 F.3d 626 (9th Cir. 2007) and other "unlawful use in commerce" cases.  In every such decision, however, litigants forfeited their mark for committing serious violations of ***federal*** product labeling or licensing requirements for medicine, dietary supplements, and alcohol products.

In short, VAIS misses the mark.  "The 'lawful use' in commerce doctrine is based solely upon the U.S. Patent and Trademark Office's interpretation of the use in commerce requirement of the Act, as necessitating use in compliance with the other Acts of Congress."[36]  Thus, as the courts have indicated, " 'unlawful' must be held to imply only such commerce as is unlawful *under the Acts of Congress.*"[37]

Once a <u>federal statute</u> is implicated (and none is here), unlawful use in commerce occurs only (1) if the agency having jurisdiction under the statute in question has determined the issue of compliance, or (2) the services or goods constitute a "per se" violation of a statute regulating the sale of those services or goods.[38]  Further, any such "per se" violation must also be "material", i.e., of such gravity and significance as to justify the draconian result of finding the holder of the trademark has lost its rights:

> [w]here . . . a party seeks to show that use by the adverse party was unlawful by virtue of noncompliance with a labeling statutory provision, it is incumbent upon the party charging that the use was unlawful to demonstrate by clear and convincing evidence more than that the use in question was not in compliance with applicable law. **Such party must prove also that the non-compliance was material, that is, was of such gravity and significance that the usage must be considered unlawful--so tainted that,**

---

[36] *Western Worldwide Enters. Group Inc. v. Qinqdao Brewery,* 17 USPQ2d 1137, 1141 (TTAB 1990); see e.g., *Satinine Societa in Nome Collettivo Di S.A. E M. Usellini v. P.A.B. Produits et Appareils de Beaute,* 209 U.S.P.Q. 958 (TTAB 1981) (and cases cited therein).
[37] *Western Worldwide*, 17 USPQ2d at 1141 (emphasis added).
[38] See, e.g., *Satinine*, *supra*, 209 U.S.P.Q. 958 (TTAB 1981).

14

**as a matter of law, it could create no trademark rights . . . ."**[39]
Next, unlawful conduct is collateral where "there is an insufficient nexus between the unlawful behavior and the use of the mark in commerce."[40]  Finally, "the proofs submitted by the party [charging noncompliance] must leave no room for doubt, speculation, surmise, or interpretation."[41]

VAIS cannot satisfy these onerous requirements.  ***First***, VAIS only alleges violations of state, not federal law. However, as held in *Western Worldwide*, *supra*, "unlawful" means "unlawful under the Acts of Congress."[42]  ***Second***, VAIS cites decisions involving only violations of federal law, not state law; it thus fails to cite relevant authority.  ***Third***, VAIS fails to identify any basis for this Court to depart from the concept that "unlawful use" is limited to violations of *federal* statutes. This last observation is particularly apt since the McCarran-Ferguson Act vests exclusive jurisdiction over the business of insurance in the States, not the federal courts unless the statute expressly provides otherwise.  ***Finally***, VAIS' references to state law fall short of meeting its heavy burden of showing a material, "per se" violation "of such gravity and significance that the usage must be considered unlawful – so tainted that, as a matter of law, it could create no trademark rights."[43]

## 1.  VAIS Has Not Shown a "Per Se" Violation of Cal. Ins. Code § 1724.5 or 10 CCR § 2052.4

VAIS argues Veronica's violated Cal. Ins. Code § 1724.5 because Mr. Silva did not use the name "Veronica's Services Insurance Agency" which the DOI told him to use.[44]  ***First***, as the court discussed in *Huber v. Barger* above, no one can bypass the DOI's jurisdiction and further, the DOI has not determined this use is

---

[39] *General Mills Inc. v. Health Valley Foods*, 24 U.S.P.Q.2d 1270, 1273-74 (TTAB 1992).
[40] *Southern California Darts Ass'n v. Zaffina*, -- F.3d. --- 2014 WL 3893093, *9 (9th Cir. 2014) (internal quotations omitted).
[41] *General Mills Inc.*, 24 U.S.P.Q.2d at 1275, citing *Satinine*, 209 U.S.P.Q. at 965.
[42] 17 USPQ2d at 1141.
[43] *General Mills*, 24 U.S.P.Q.2d at 1273-74.
[44] Opposition at 8.

improper.  **Second**, VAIS conveniently fails to mention that Veronica's *has* used that full name on insurance documents provided to consumers since 2009.[45]  **Third**, even if some advertising omits the term "agency," all of Veronica's advertising and receipts from 2009 through 2014 prominently use the word "insurance" next to "Veronica's Services." Thus, it has clearly informed consumers it is in the insurance business; hence, it has complied with 10 CCR § 2052.4.[46]  **Fourth**, 10 CCR § 2052.4 indicates the term "agency" is the legal equivalent of "services"—a term *already included* in the mark VERONICA'S SERVICES.[47] Thus, omitting "agency" is not a "per se" violation of *either* Cal. Ins. Code § 1724.5 or 10 CCR § 2052.4.

## 2.  VAIS Has Not Shown a "Per Se" Violation of Cal Ins. Code §§ 1725.5 or 1726

VAIS argues that Veronica's violated Insurance. Code §§ 1725.5 and 1726 by using the "wrong name" and "wrong license number" in its advertising.[48]  **First**, as noted above, Veronica's used its full name or legal equivalent.  **Second**, Veronica's could display either Mr. Silva's or Veronica's license number since after 1998, at least one of them was licensed at all times.  Further, Mr. Silva transacted all of Veronica's insurance business.[49]  Contrary to VAIS, consumers never had to "guess" with whom they were doing business because they always received policies

---

[45] Supplemental Declaration of Jaime Silva, ("Jaime Supp. Decl."), ¶ 4, Ex. A (insurance applications and policies dated 2009-2014 showing "Veronica's Services Insurance Agency") While VAIS argues Mr. Silva (as Veronica's predecessor) failed to notify the DOI he was using the name VERONICA'S SERVICES until 2008. Opposition at 7), Section 1724.5 does not provide any clear deadline for registering a fictitious name after issuance of a license.  The Silvas eventually registered their business name with the DOI in 2008, long before VAIS' first use of the mark in 2011.  Inasmuch as the statute is vague at least as to the time for compliance, VAIS has not shown a clear, "per se" violation of the statute by Veronica's predecessor.
[46] See, e.g., Jimmy Decl. (in support of MSJ), Ex. A, C (advertising and receipts showing the word "insurance" appearing to the right of "Veronica's Services").
[47] 10 CCR § 2052.4(c) provides that "A proposed name may be misleading if the name fails to state or clearly indicate that the applicant or licensed producer is or will be an insurance producer by . . . [f]ailing to include in its name the word "insurance" followed by one of the following definitive words: (a) "agency", "services", "marketing", "sales", "solutions", "center" . . . .".
[48] Opposition at 8-9
[49] *See* Jaime Decl. (in support of MSJ), ¶ 7, 8, 16, 17.

REPLY IN SUPPORT OF VERONICA'S SERVICES, INC.'S MOTION FOR PARTIAL SUMMARY JUDGMENT

sold to them by a licensed professional. ***Third***, *VAIS own advertising routinely fails to display any license number at all.*[50] Thus, less than strict compliance with this technical rule could not amount to a "per se" violation. If the conclusion were otherwise, VAIS itself would be in violation and thus, forfeit all of its claimed trademark rights. In sum, Veronica's has not violated Section 1725.5 "per se" (or otherwise).

### 3. VAIS Has Not Shown a "Per Se" Violation of Cal Ins. Code § 1631

VAIS' "expert" witness speculates Veronica's has violated § 1631, which provides that only licensed professionals can "solicit, negotiate, or effect contracts of insurance. He claims to be "left with concerns that unlicensed individuals were allowed to transact insurance" based on his "observation" that "receipts for insurance were issued by unlicensed individuals"; there were "policies placed at multiple [office] locations"; and the "total number of customers reported by Mr. Silva and VSI (5,000-7,500)" although it had had four licensed brokers.[51]

Speculation by VAIS' putative "expert" about his "concerns" over payment receipts is not a substitute for facts. That is particularly so because he has ignored Insurance Code § 1635 which specifically exempts administrative personnel from the need to obtain a license.[52] DOI regulations, i.e., 10 CCR 2193.1, similarly exempt such clerical activities. In sum, although insurance brokers, like lawyers,

---

[50] Supplemental Declaration of Jimmy Silva, ("Jimmy Supp. Decl."), at ¶ 4, Ex. A (VAIS internet advertisements failing to display VAIS' license number).

[51] Opposition at 9.

[52] Insurance Code § 1635 provides in relevant part:

No license is required . . . for a person to act in the following capacities or to engage in the following activities . . .

         \*        \*        \*

(d) Employment that does not include the solicitation, negotiation, or effecting of contracts of insurance and the signing of policies or other     evidences of insurance.

         \*        \*        \*

(i)      As an employee of a licensed property broker-agent or casualty broker-agent, whose employment is one or more of the following:

      (1)      That of a regularly salaried administrative or clerical employee whose activities do not include the solicitation, negotiation, or effecting of contracts of insurance from the insuring public.

17

1  must obtain a license, they can hire unlicensed personnel to handle accounting or

2  administrative functions.  In sum, the "concern" of VAIS' "expert" is irrelevant.

3          While that purported "expert" suggests it was impossible for Veronica's to

4  serve all of its customers at "three or four" different offices *at same time*, he failed

5  to disclose to the Court – although he was aware of the fact – Veronica's never

6  operated more than _two_ offices at one time between 2009-2014.  Further, since

7  Veronica's – in contrast to VAIS – had a _long history of serving insurance_

8  _customers, i.e., since 1998_, many of its customers merely renewed their policies.  In

9  short, the expert's "concern" is not a substitute for fact.  Veronica's provided a

10  valid service to its customers.

11          **4.  There is no "Nexus";Technical Non-compliance Was Immaterial**

12          VAIS offers no evidence demonstrating Veronica's advertising deceived its

13  customers in any way or misadvised them about information relevant to sales of

14  insurance.  Veronica's advertising informed customers they were buying insurance

15  through a licensed broker; further, *it or its manager, Jaime Silva, were always*

16  *licensed to sell insurance.*  At bottom, VAIS provides no evidence that omitting

17  "agency" or occasionally using Silva's license number (rather than Veronica's) was

18  "so tainted that, as a matter of law, it could create no trademark rights."[53]

19          Nor could this Court reasonably find a "nexus" between any technical non-

20  compliance with the DOI's advertising regulations and Veronica's trademark rights.

21  In contrast to the extremely technical advertising regulations promulgated by the

22  DOI, VAIS cites decisions involving significant mislabeling of products – such as

23  medication and alcohol – which are potentially extremely dangerous to consumers.

24  As the *CreAgri* court highlighted, this danger was key to its conclusion regarding

25  "the nexus  between a misbranded product and that product's name, ***particularly***

26  ***one designed for human consumption***, is sufficiently close to justify withholding

27  _____

28          [53] *General Mills*, 24 USPQ2d at 1274.

trademark protection.[54]  Plainly, the regulations about using the word "agency" is very different than mislabeling medicine or alcohol.  Unlike customers buying mislabeled products, Veronica's customers always received exactly what they paid for: a valid insurance policy issued through a licensed insurance broker.  VAIS provides no evidence suggesting consumers were deceived or misled (or even subjected to any potential harm) because of any purported non-compliance.

Finally, VAIS' demand for a draconian result – that VAIS receive the mark because of technical, immaterial violations of advertising regulations which harmed no one – constitutes a disproportionate consequence.  As discussed above, the McCarran-Ferguson Act precludes any impairment of state laws governing the business of insurance.  And California law vests exclusive jurisdiction to enforce these regulations in the DOI.  VAIS' demands would violate both of these basic principles and subvert the Lanham Act's core public policies of preventing consumer confusion and favoring the prior user of a mark.[55]  Accordingly, VAIS has not shown any "per se" regulatory violations which could deprive Veronica's of its own trademark.

## IV.   VERONICA'S WAS THE FIRST TO USE THE MARK

VAIS' admission, through its CEO, that Veronica's was the first to use the mark should be sufficient to end this dispute.  Veronica's used the mark as early as 2005, long before VAIS' started using it in 2011.  Despite the clarity of these admissions, its counsel seeks to distract the Court with a series of irrelevant dates to create a different impression indicating for example:

---

[54] *CreAgri, Inc. v. USANA Health Scis., Inc.*, *supra,* 474 F.3d at 632. (emphasis added)
[55] See *Northwestern Corp. v. Gabriel Manufacturing Co. Inc.*, 48 U.S.P.Q.2d 1902, *1998 U.S. Dist. LEXIS 12763 *17, 28* (N.D. Ill. 1998) (rejecting argument that "any trademark infringement plaintiff risks having his argument fall upon deaf ears unless he has been a model citizen", and requiring that "[d]efendants must allege that [Plaintiff] has somehow done violence to the public policy which establishes [Plaintiff's] trademark rights).

1  • In the "early 1990's," Gallardo worked with her sister, Adriana Gallardo[56];

2  • On July 26, 2001, Gallardo obtained her broker's license "in her own name"

3    and "has been in the insurance business continuously since then";[57]

4  • "[O]n or about April 2, 2007, Veronica incorporated a business in California

5    using her personal name";[58]

6  • On November 25, 2008, VAIS obtained its license to transact insurance;[59]

7  • "[S]ince September 2010, VAIS has provided vehicle _registration_ services

8    under its VERONICA'S REGISTRATION SERVICES mark."[60]

9  As a matter of law, not one of these "facts" establishes use of "Veronica's" to sell

10 auto insurance.  As the courts have explained: "To acquire ownership of a

11 trademark it is not enough to have invented the mark first or even to have registered

12 it first; ___the party claiming ownership must have been the first to actually use the___

13 ___mark in the sale of goods or services.___"[61]  Whether Gallardo obtained a broker's

14 license in 2001 or formed VAIS to sell policies under her sister's mark "Adriana's

15 Insurance" in 2007 is beside the point; plainly, these acts did not constitute "sales"

16 under the Veronica's mark and thus, could not create any rights to the mark.

17 Similarly, since Veronica's started using the mark to sell insurance in 2005,

18 whether VAIS later provided auto _registration_ services (but no sales of auto

19 insurance) in 2010 is irrelevant and moreover, is plainly junior to Veronica's use of

20 the mark.  Additionally, since Gallardo did not use the mark when she worked with

21 her sister in 1990, that employment is irrelevant.  The undisputed evidence shows

22 Veronica's was the first to use the mark to sell insurance and did so long before

23 VAIS started doing so.[62]  Thus, Veronica's is entitled to the mark.

24 ───────────
   [56] Opposition at 1.
25 [57] _Id._
   [58] _Id._ at 2
26 [59] _Id._
   [60] _Id._ at 2.
27 [61] _Emergency One, Inc. v. Am. Fire Eagle Engine Co._, 332 F.3d 264, 267, 268 (4th Cir.
   2003) (emphasis added).
28 [62]   VAIS irrelevantly argues Veronica's "mimicked" VAIS by "using a beautiful dark-
                                                                           (continued…)

20

## V.   VERONICA'S MARK IS DISTINCTIVE AND PROTECTABLE

Surprisingly, VAIS tries to create a "dispute" about the distinctiveness of the mark VERONICA'S SERVICES by simultaneously arguing both sides of the issue. Thus, VAIS argues that mark is *inherently distinctive* and is thus protectable as a trademark for auto insurance services.[63]  It, however, simultaneously argues Veronica's mark is merely a "personal name" and cannot be protected as a trademark.[64]  This Court should reject VAIS' internally inconsistent suggestion that VAIS' use of the mark is protectable but Veronica's is not.  The marks – VERONICA'S SERVICES and VERONICA'S INSURANCE – are substantially identical.  And the parties and the USPTO[65] agree "Veronica's" is inherently distinctive as to auto insurance.  Thus, there is no genuine dispute that VERONICA'S SERVICES is inherently distinctive for auto insurance services.

Even if the Court somehow concludes "Veronica's" is not inherently distinctive, Veronica's has clearly demonstrated a secondary meaning through using and advertising the mark over a decade.  The evidence is clear that Veronica's made over one million dollars in sales since 2005, and spent over $151,000 in advertising. And Veronica's customers, who have renewed their policies over the years, continue to provide good word of mouth advertising.

---

(…continued)
haired woman in its ads" and "advertising $15/month deals and $50.00 off coupons".  Opposition at 25.   VAIS, however, fails to provide dates of use or any evidence of a protectable interest in these promotions.  Moreover, Veronica's has used images of dark-haired women in advertising since at least as early as 2009 – 2 years before VAIS even started using the mark. See, e.g., Jimmy Decl. (in support of MSJ), Ex. A (2009 Pennysaver ad showing black-haired woman, date appearing in very small font in lower right corner of ad).  Veronica's has also offered its $15/month promotion since 2009 (again before VAIS); further, a  "$50" promotion is standard in the insurance industry. Jimmy Supp Decl., ¶ 5.  As the senior user, Veronica's cannot be charged with "mimicking" the infringing use of its own mark by VAIS.  These disputed allegations do not create any "material" or "genuine" dispute because they do not change the parties' respective priority dates of 2005 and 2011 and/or are irrelevant to the use of the "Veronica's" mark.
[63] Opposition at 16.
[64] *Id.* at 14.
[65] The Court may infer that "Veronica's" is inherently distinctive because the USPTO issued VAIS' federal registration for Veronica's Insurance.

REPLY IN SUPPORT OF VERONICA'S SERVICES, INC.'S MOTION FOR PARTIAL SUMMARY JUDGMENT

1    VAIS however argues Veronica's use of its mark was "sporadic and

2    minimal".[66]  Thus, VAIS argues "based on the zip codes of VSI's actual purchasers,

3    it is apparent that customers chose VSI because of its location and proximity to

4    their homes or business – not brand recognition."[67]  VAIS overlooks (and does not

5    dispute) the evidence, e.g., customer lists and receipts, showing Veronica's has

6    used its mark throughout Los Angeles County and other nearby counties and, in

7    response to that effort, obtained customers, including those who repeat.  Moreover,

8    if the mark were not already well-recognized in Los Angeles, VAIS would not have

9    any desire to obtain the mark for itself.  VAIS' adoption of the *same mark*[68] in the

10   *same geographic area* and its attempt to take it by force in this proceeding

11   demonstrates the valuable secondary meaning that is already in existence.

12       Veronica's displayed its mark to the consuming public on its storefront sign

13   since 1994,[69] its general advertising since 2005 and on its receipts.  VAIS, however,

14   disputes VAIS's sales figures, arguing "at least $330,000 should be deducted

15   from VSI's total revenues" because Jaime Silva filed his portion of the sole

16   proprietorship's 2005 and 2007 tax returns under the name "Jaime Insurance", not

17   "Veronica's Services".[70]  The name of the taxpayer on a federal tax return (which is

18   privileged and unavailable to the public) is irrelevant since trademark rights are

19   acquired through <u>public</u> use and display of a mark.[71]

20       [66] Opposition at 15.
         [67] *Id*. at 20.
21       [68] *Transgo, Inc. v. Ajac Transmission Parts Corp.*, 768 F.2d 1001, 1015-16 (9th Cir. 1985)
22   (naming the first four factors, then adding that "[p]roof of exact copying, without any opposing
     proof, can be sufficient to establish secondary meaning," since "[t]here is no logical reason for the
23   precise copying save an attempt to realize upon a secondary meaning that is in existence"); *see
     also Vision Sports, Inc. v. Melville Corp.*, 888 F.2d 609, 615 (9th Cir. 1989) (proof of copying
24   strongly supports an inference of secondary meaning).
         1989) (proof of copying strongly supports an inference of secondary meaning)
25       [69] It is indisputable that the sign was erected in 1994.  VAIS disputes whether the sign is
26   "large" but quibbling about characterizations cannot create any genuine or material dispute as to
     whether Veronica's first advertised the mark on its sign.
27       [70] Opposition at 20.
         [71] *Chance v. Pac–Tel Teletrac Inc*., 242 F.3d 1151, 1159 (9th Cir. 2001)
28

REPLY IN SUPPORT OF VERONICA'S SERVICES, INC.'S MOTION FOR PARTIAL SUMMARY JUDGMENT

1    VAIS next argues that Veronica's revenues are "inflated" because "VSI's

2    customer's lists and annual revenue do not separate the amounts earned from

3    insurance services" from Veronica's tax and notary services. Opposition at 20.

4    VAIS' misreads the evidence.  VAIS correctly states Veronica's 2006-2008

5    customer list[72] does <u>not</u> separate auto insurance from tax and notary customers.[73]

6    However, Veronica's 2009-2014 customer lists[74] and 2005 and 2007 tax returns[75]

7    show <u>only</u> auto insurance revenues.  <u>These</u> documents support the Silvas'

8    statements that they earned over one million dollars in revenues since 2005, and

9    they are not in dispute.  Thus, there is no dispute of material fact whether

10   VERONICA'S SERVICES has acquired secondary meaning in the minds of

11   consumers.

12   ## VI.    THERE IS A LIKELIHOOD OF CONFUSION

13   Despite the virtual identity of the marks VERONICA'S SERVICES and

14   VERONICA'S INSURANCE, the identity of services offered by both, and ***<u>VAIS'</u>***

15   ***<u>own admission in its Complaint the marks are likely to cause confusion</u>***, VAIS

16   argues there is no likelihood of confusion.[76]  Unsupported arguments do not create

17   a genuine dispute of fact.  VAIS admitted a likelihood of confusion by suing

18   Veronica's for trademark infringement.  Further, VAIS highlighted in its complaint

19   the identity of the marks, services provided, trade channels, and classes of

20   consumers; these factors compel a finding of a likelihood of confusion. *See Nissan*

21   *Motor Co. v. Nissan Computer Corp.*, 378 F.3d 1002, 1019 (9th Cir.2004)

22   (affirming summary judgment where the marks were "legally identical," the goods

23   at issue were related, and the marketing channels overlapped).  Thus, it is

24   undisputed that concurrent use of the marks is likely to cause confusion.

---

[72] Martha Decl. (in support of MSJ), Ex. A
[73] Notice of Errata and Correction to Martha Decl. (filed with the Court).
[74] Martha Decl. (in support of MSJ), Ex. C
[75] Jaime Decl. (in support of MSJ), Ex. A
[76] Opposition at 21 ("there can be no likelihood of confusion as a matter of law.").

23

## VII.   PRIORITY OF USE CONTROLS ALL OTHER ISSUES

VAIS baldly concludes, without disputing a single fact, that "genuine issues of fact remain" as to whether Gallardo is an "active moving force" behind the infringement sufficient to hold her personally liable.[77]  By failing to dispute Gallardo's and VAIS' plain admissions that Gallardo is the person solely and personally responsible for directing the infringing use the mark, Gallardo concedes the issue.  Accordingly, she is personally liable for the infringement.

VAIS argues identically as to cancellation of its registration: "although VSI claims priority of use in order to overcome the validity presumptions, cancellation is not proper on summary judgment . . . .".[78]  Again, VAIS fails to show any genuine material dispute of fact as to priority of use.  Nor could it do so based on its CEO's admission VAIS was the junior user.  Instead, it summarily asserts the issue is "not proper" for summary judgment.  Such *ex cathedra* pronouncements are insufficient to create a dispute of fact.  To the contrary, since there is no dispute of fact, this Court should cancel the registration.

Finally, VAIS argues that summary judgment on VAIS' frivolous claims is inappropriate because "trademark cases are notoriously fact intensive".[79]  However, this case has no material factual dispute.  That is so because VAIS has already admitted: (1) it was not the first to use the mark (2) "Veronica's" is inherently distinctive and protectable for auto insurance,[80] and (3) the marks are likely to cause confusion.  These admitted facts are sufficient to grant summary judgment.

---

[77] Opposition at 22.
[78] *Id.* at 23.
[79] *Id.* at 25.
[80] And in the alternative, the Court may find that nearly a decade of use of VERONICA'S SERVICES throughout Los Angeles and the surrounding counties, more than one million dollars in sales since 2005, and over $151,000 in advertising, not including extensive word of mouth advertising, coupled with VAIS' near-exact copying of the mark (for no other reason than to steal Veronica's existing consumer goodwill), is more than sufficient to create secondary meaning (consumer recognition) in the mark.

1

## VIII.   CONCLUSION

2          Based on the foregoing, the Court should grant Veronica's motion.

3
        Dated:  October 6, 2014                    ADLER LAW GROUP
4                                                  ERWIN E. ADLER

5                                                  PATEL & ALMEIDA, P.C.
                                                   ALEX D. PATEL
6                                                  PAULO A. DE ALMEIDA

7
                                                   By: /Paulo A. de Almeida/
8                                                       Paulo A. de Almeida

9
                                                   Attorneys for Defendant and
10                                                 Counterclaimant,
                                                   VERONICA'S SERVICES, INC.
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

REPLY IN SUPPORT OF VERONICA'S SERVICES, INC.'S MOTION FOR PARTIAL SUMMARY JUDGMENT