PATEL & ALMEIDA, P.C.
ALEX D. PATEL (State Bar No. 201875)
alex@patelalmeida.com
PAULO A. DE ALMEIDA (State Bar No.279168)
paulo@patelalmeida.com
16830 Ventura Blvd., Suite 360
Encino, CA  91436
Telephone: 818.380.1900

ADLER LAW GROUP
ERWIN E. ADLER (State Bar No. 040638)
eadler@adlerlawgroup.com
350 S. Figueroa, Suite 557
Los Angeles, CA. 90071
Telephone 213.893.3900
Fax 213.893.3910

Attorneys for Defendant and Counterclaimant,
VERONICA'S SERVICES, INC.

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| VERONICA'S AUTO INSURANCE SERVICES, INC., a California Corporation,<br><br>　　　　　Plaintiff,<br><br>　　　　v.<br><br>VERONICA'S SERVICES, INC., a California corporation,<br><br>　　　　　Defendant.<br>_____<br>VERONICA'S SERVICES, INC., a California corporation,<br><br>　　　　　Counterclaimant,<br><br>　　　　v.<br><br>VERONICA'S AUTO INSURANCE SERVICES, INC., et al.,<br><br>　　　　　Counter-Defendants. | Case No. EDCV13-1327 DDP (DTBx)<br><br>*Assigned to Courtroom 3*<br>*The Hon. Dean D. Pregerson*<br><br>**OPPOSITION TO COUNTER-DEFENDANTS' *EX PARTE* APPLICATION FOR LEAVE TO FILE A SUR-REPLY** |

# TABLE OF CONTENTS

Page

I.    INTRODUCTION ........................................................................... 1

II.   VAIS' SUR-REPLY IS IMPROPER AND MERITLESS ........................... 1

1.    VAIS Would Not Be Irreparably Prejudiced if its Sur-reply Were

Not Considered ................................................................................ 2

a.    VAIS could have included the arguments in its Opposition

papers but chose not to do so ........................................................ 3

b.    VAIS' new arguments are meritless ........................................ 5

i.    Veronica's was not timely notified of alleged

insurance code violations .................................................... 5

ii.    VAIS failed to produce documents or supplement its

disclosures in discovery; exclusion is mandatory under

F.R.C.P. 26(e) ..................................................................... 9

iii.    VAIS attempt to regulate Veronica's advertising

through the Lanham Act violates the McCarran-Ferguson

Act ..................................................................................... 11

(a).    VAIS theory about a "modern framework

analysis" cannot overrule Controlling Supreme

Court Precedent ............................................................. 11

(b).    Because certain VAIS citations fail to discuss

or even mention the McCarran-Ferguson Act, they

fail to address the preemption issue and thus,

should be disregarded ................................................... 14

(c).    Section 2(b) of the McCarran-Ferguson Act
specifically preempts any general federal statute
which "invalidates, impairs, or supersedes" a state
law regulating the business of insurance ....................................... 15

(d).    California has vested exclusive jurisdiction in
the DOI to determine whether the insurance code or
the DOI regulations have been violated......................................... 18

iv.    VAIS' repeated arguments regarding secondary
meaning are meritless.......................................................... 20

2.    VAIS Is Entirely at Fault for its Current Situation ............................... 23

III.    CONCLUSION ............................................................. 24

OPPOSITION TO COUNTER-DEFENDANTS' EX PARTE APPLICATION FOR LEAVE TO FILE A SUR-REPLY

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Am. Stock Exch. v. Mopex, Inc.*, 215 F.R.D. 87 (S.D.N.Y. 2002) ...........................9

*Arch Ins. Co. v. Allegiant Professional Services, Inc*., 2012 WL 5182891 (C.D. Cal. 2012) ........................................ 14

*Axiom Ins. Managers Agency, LLC v. Indmenity Ins. Corp.*, 2011 WL 3876947 (N.D. Ill. 2011) ............................... 17

*Colonial Life & Accident Ins. Co. v. American Family Life Assurance Co.*, 846 F. Supp. 454 (D.S.C. 1994) ........................... 13, 16

*Crusader Ins. Co. v. Scottsdale Ins. Co.*, 54 Cal.App.4th 121 (1997) ............. 15, 19

*Emergency One, Inc. v. Am. Fire Eagle Engine Co*., 332 F.3d 264 (4th Cir. 2003) ............................................... 21

*FTC v. National Casualty Co*. 357 U.S. 560 (1958) ............................. 12, 13, 14, 18

*Gerling Global Reinsurance Corp. v. Low*, 240 F.3d 739 (9th Cir. 2001) ............ 13

*GoClear LLC v. Target Corp.*, 2009 WL 160624 (N.D. Cal. 2009) ........................ 4

*Group Life & Health Ins. Co. v. Royal Drug Co*., 440 U.S. 205 (1979)................. 12

*Hart v. Massanari*, 266 F.3d 1155 (9th Cir. 2001) ...................................... 11

*Highmark, Inc. v. UPMC Health Plan, Inc*., 276 F.3d 160, 68 U.S.P.Q.2d 1823 (3d Cir. 2001) ....................................... 14, 17

*Huber v. Barger*, 25 Cal.App.3d 1092 (1972) ................................. 15, 19

*Humana Inc. v. Forsyth*, 525 U.S. 299 (1999) ...................................... 15

*In re Nat'l Western Life Ins. Deferred Annuities Litig*., 467 F. Supp. 2d 1071 (S.D. Cal. 2006) .......................................... 19, 20

*L.D. Kichler Co. v. Davoil, Inc.*, 192 F.3d 1349, 52 USPQ2d 1307 (Fed. Cir. 1999)....................................... 22

*Litton Industries, Inc. v. Lehman Bros. Kuhn Loeb, Inc.*, 767 F.Supp. 1220 (S.D.N.Y. 1991), rev'd on other grounds, 967 F2d 742 (2nd Cir. 1992) ....... 3

*Marvin Lumber and Cedar Co. v. PPG Industries, Inc*. 177 F.R.D. 443 (D.

Minn. 1997) ........................................................................................ 10

*Merchants Home Delivery Serv. v. Frank B. Hall & Co.*, 50 F.3d 1486 (9th Cir. 1995) .................................................................................................. 19

*MDM Grp.Associates, Inc. v. Emerald Isle Realty, Inc.,* 2008 WL 2641271 (E.D.N.C. 2008) ................................................................................... 10

*Mission Power Eng'g Co. v. Continental Cas. Co.*, 883 F. Supp. 488 (C.D. Cal. 1995) ............................................................................................. 1

*Murphy v. Provident Mut. Life Ins. Co. of Philadelphia*, 756 F. Supp. 83 (D. Conn. 1990) aff'd, 923 F.2d 923 (2d Cir. 1990).......................................... 14

*Nationwide Mut. Ins. Co. v. Tri-Cont'l Exch., Ltd.*, 2001 WL 34398158 (C.D. Cal. 2001) ........................................................................................... 14

*Negrete v. Allianz Life Ins. Co. of N. Am.*, 927 F. Supp. 2d 870 (C.D. Cal. 2013) .................................................................................................. 19

*Pfizer, Inc. v. Teva Pharms. USA, Inc.,* 518 F.3d 1353 (Fed. Cir. 2008) ............. 14

*Robertson v. California*, 328 U.S. 440 (1946) ...................................................... 12

*Salgado v. General Motors Corp.,* 150 F.3d 735 (7th Cir.1998) ........................... 10

*Sears, Roebuck & Co.v. All States Life Ins. Co.*, 246 F.2d 161 (5th Cir. ............... 15

*SEC v. National Sec., Inc.*, 393 U.S. 453 (1969)................................................. 12, 13

*Sun Life Assurance Co. of Canada v. SunAmerica, Inc.*, 45 U.S.P.Q.2d 1621 (N.D. Ga. 1997) ................................................................................. 17

*Travelers Ins. Co. v. Buffalo Reinsurance Co.,* 735 F.Supp. 492 (S.D.N.Y.), vacated in part on other grounds, 739 F.Supp. 209 (S.D.N.Y. 1990) ................................................................................... 3

*Trouble v. Wet Seal, Inc.*, 179 F. Supp 2d 291 (S.D.N.Y. 2001) ....................... 4, 9

*United Labor Life Insurance Co. v. Pireno*, 458 U.S. 119 (1982)........................ 13

*USLIFE Corp. v. U.S. Life Ins. Co.,* 560 F.Supp. 1302 (N.D. Tex. 1983) ....... 17, 18

*Wells Fargo & Co. v. ABD Ins. & Fin. Servs., Inc.*, 758 F.3d 1069, 1071 (9th Cir. 2014)............................................................................................ 14

*Yamaha Int'l Corp. v. Hoshino Gakki Co.*, 840 F.2d 1572, 6 U.S.P.Q.2D

-iv-

(BNA) 1001 (Fed. Cir. 1988) ........................................................ 22

*Yeti By Molly, Ltd. v. Deckers Outdoor Corp.* 259 F3d 1101 (9th Cir. 2001) ........ 10

## FEDERAL STATUTES

Fed.R.Civ.P. 26(e) ....................................................................... 2, 4, 9

Fed.R.Civ.P. 37(c) ........................................................................ 10

15 U.S.C. §1052(f) ....................................................................... 22

37 C.F.R. §2.41(b) ....................................................................... 22

15 U.S.C. § 1012 ....................................................................... 11-12

## OTHER AUTHORITIES

Trademark Manual of Examining Procedure, §1212.05(a) ..................................... 22

OPPOSITION TO COUNTER-DEFENDANTS' EX PARTE APPLICATION FOR LEAVE TO FILE A SUR-REPLY

Defendant-Counterclaimant, VERONICA'S SERVICES, INC. ("Veronica's") hereby opposes Plaintiff Veronica's Auto Insurance Services, Inc. ("VAIS") and third party defendant Laura Veronica Gallardo's ("Gallardo") (collectively, "VAIS") *Ex Parte* Application for Leave to File a Sur-Reply Brief.

## I.   INTRODUCTION

Veronica's pending Motion for Partial Summary Judgment ("Motion") is fully briefed and set to be heard in five days, i.e., on Monday, October 20, 2014. Veronica's, in its reply brief, merely responded to the points in VAIS' Opposition. Now, *five days* before the hearing, VAIS wants *two* additional "bites of the apple." VAIS has filed a "Sur-Reply" with **15 pages** of additional argument and a "Response to Counterclaimant's Evidentiary Objections . . ." with *another* **17 pages** of argument (collectively, the "Sur-reply").

The Court should reject VAIS' last-minute attempt to burden Veronica's with **32 pages** of additional argument five days before the hearing, particularly since the arguments are untimely and meritless.  Thus, it should deny the *ex parte* application.

## II.   VAIS' SUR-REPLY IS IMPROPER AND MERITLESS

To merit ex parte relief, **first** VAIS must show it will be "irreparably prejudiced if the underlying motion is heard according to regular noticed motion procedures."[1]  Further, "[t]o show irreparable prejudice, it will usually be necessary to refer to the merits of the accompanying proposed motion, because if it is meritless, failure to hear it cannot be prejudicial."[2]  **Second**, VAIS must also show "the moving party [i.e., VAIS] is without fault in creating the crisis that requires ex parte relief, or that the crisis occurred as a result of excusable neglect."[3]

---

[1] *Mission Power Eng'g Co. v. Continental Cas. Co.*, 883 F. Supp. 488, 492 (C.D. Cal. 1995).

[2] *Id* (emphasis added).

[3] *Id*.

1

VAIS' "Sur-reply" belatedly and improperly argues: (1) VAIS notified Veronica's about its unpled insurance code violations during a "meet and confer" on August 21, 2014.  (That "meet and confer," however, occurred three weeks *after* discovery cutoff and shortly before Veronica's filed this motion); (2) Although VAIS' post-discovery-cutoff subpoena to the DOI violated this Court's Scheduling Order, this court should ignore the tardiness of that subpoena; and disregard VAIS violation of Fed.R.Civ.Pro. 26(e) with its failure to supplement its disclosures and belated document production; thus, VAIS should be entitled to submit those documents into evidence; (3) the *McCarran-Ferguson Act* does not bar VAIS' surprise "unlawful use in commerce" theory; and (4) Veronica's failed to establish a secondary meaning in the "Veronica's" mark (a point VAIS *previously argued* in its Opposition).  The Court should reject this belated and meritless "Sur-reply."

**First**, VAIS would not be "irreparably prejudiced" were the Court to decline to consider VAIS additional 32 pages of Sur-reply, particularly since VAIS has previously argued some of these points.  And it could have raised the remainder in its Opposition but chose not to do so.  Veronica's, in its Reply, merely responded <u>directly</u> to the Opposition arguments.  In any event, VAIS arguments are meritless.

**Second**, VAIS is at fault for creating this situation.  Thus, Veronica's should not have to bear the burden of responding to the "Sur-reply" simply because VAIS wants to repeat certain of its arguments and failed to address Veronica's obvious and *direct* response to its new "unlawful use in commerce" theory.

## 1.  VAIS Would Not be Irreparably Prejudiced if its Sur-Reply Were Not Considered

VAIS had a full opportunity to present its arguments.  Nonetheless, it now chooses to repeat certain of the arguments it made in its Opposition.  Further, after deciding to ignore basic legal issues in its Opposition, it now changes course and belatedly presents them in the "Sur-Reply."  Put simply, were the Court to deny

VAIS *ex parte* application, it would not be irreparably prejudiced if it were precluded from repeating its prior arguments or barred from belatedly raising arguments it could have and should have raised previously.  Moreover, since the arguments are legally meritless, VAIS will not sustain irreparable prejudice.

### a. <u>VAIS could have included the arguments in its Opposition papers but chose not to do so</u>

Veronica's, in its Reply brief, merely responded to each contention of VAIS' Opposition, including VAIS' newly-minted theory regarding violations of Insurance Code and DOI regulations governing advertising.  As held in *Litton Industries, Inc. v. Lehman Bros. Kuhn Loeb, Inc.*,[4] to avoid giving unfair advantage to the party filing the opposition who argued issues previously unseen by the moving party, the party filing the reply brief may fully respond to issues raised in the opposition brief.  VAIS cannot justify its filing of 32 additional pages of argument merely because it chose to ignore the <u>obvious</u> and <u>direct</u> response which it could readily foresee Veronica's would be obliged to make to VAIS' new theory.  In *Travelers Ins. Co. v. Buffalo Reinsurance Co.*[5], the court explained in denying a request to file sur-reply brief: "Although defendants' reply papers addressed issues not raised in its moving papers, each point in the reply brief directly responds to an issue raised in Travelers' opposition papers."

Simply stated, Veronica's did <u>not</u> present any new arguments or evidence which VAIS could not have reasonably anticipated and addressed in its Opposition.  <u>Presumably, VAIS researched its unpled "unlawful use in commerce" theory, including the obvious procedural obstacles to raising new factual issues after discovery cut-off.</u>  Had VAIS intended the Court to consider new, unpled

---

[4] *Litton Industries, Inc. v. Lehman Bros. Kuhn Loeb, Inc.*, 767 F.Supp. 1220, 1235 (S.D.N.Y. 1991), rev'd on other grounds 967 F2d 742 (2nd Cir. 1992).

[5] *Travelers Ins. Co. v. Buffalo Reinsurance Co.,* 735 F.Supp. 492, 495-496 (S.D.N.Y.), vacated in part on other grounds*,* 739 F.Supp. 209 (S.D.N.Y. 1990).

issues for the first time on summary judgment—as it now argues this Court should do, citing *GoClear LLC v. Target Corp.*, 2009 WL 160624 (N.D. Cal. 2009)[6]—it should have requested leave to amend its answer.  VAIS could then have alerted the Court and Veronica's that it would raise new factual allegations.  And it could also have candidly disclosed to the Court that it would be requesting the court to consider untimely produced documents, as VAIS <u>*now*</u> argues in its "Sur-reply," citing *Trouble v. Wet Seal, Inc.*, 179 F. Supp 2d 291, 297 (S.D.N.Y. 2001)(four factor test for excluding late produced documents).[7]

VAIS, however, failed to address its own obvious shortcomings during the pleading, discovery and post-discovery-cutoff phases—apparently hoping Veronica's would ignore them.  To press its contentions, it seeks to file a Sur-reply containing some arguments it previously raised in its Opposition and others it

---

[6] In *GoClear*, the court allowed the affirmative defense of "unclean hands" to be considered for the first time on summary judgment, explaining "[h]ere, <u>Target has not asserted, let alone shown, it has been prejudiced</u> by the manner in which the lawfulness of the prior use of the mark CLEAR X has been raised by GoClear.  Consequently, the Court finds GoClear may assert lack of lawful use as a defense to Target's counterclaims." 2009 WL 160624 at *3.  In stark contrast, here, Veronica's forcefully objected to the introduction of new, unpled allegations of Insurance Code violations, and furthermore, requests late-produced documents—which VAIS actively represented it did not possess, and *itself* objected to producing on the grounds of *relevancy*—to be excluded.

[7] Unlike the case at bar, in *Wet Seal*, the plaintiff affirmatively represented during discovery that she would supplement her discovery responses with additional documents.  In stark contrast, here, VAIS *objected* to production of documents relating to its affirmative defenses on the grounds of *relevancy*, then (under threat of motion to compel) represented that *no documents exist*.  Three weeks after the close of discovery and two weeks before Veronica's filed this Motion, VAIS issued a post-discovery-cutoff subpoena (over Veronica's objection) and produced late documents in direct violation of Fed.R.Civ.Pro. 26(e)(duty to supplement initial disclosures).  This case is a far cry from *Wet Seal*.  Had VAIS planned to use belatedly-produced documents as part of its Opposition or at trial, it should have anticipated—and addressed—Veronica's obvious objections in its Opposition papers.

should have raised—such as those regarding the McCarran-Ferguson Act—but chose not to raise; that procedure is plainly improper.[8]  Plainly, VAIS would not be irreparably prejudiced if the Court did not consider its lengthy "Sur-Reply."  In sum, that "Sur-Reply," at best, demonstrates poor preparation and a cavalier disregard for the rules.  Potentially, it may be nothing more than pure and simple gamesmanship aimed at getting another 32 pages of argument.

### b.  VAIS' new arguments are meritless

VAIS' would not suffer irreparable prejudice if its Ex Parte Application were denied because the arguments in its 32 page "Sur-reply" are meritless.

### i.   Veronica's was not timely notified of alleged Insurance Code violations

VAIS argues it notified Veronica's of its intent to argue violations of the Insurance Code and DOI regulations because (1) "VAIS' counsel specifically inquired into VSI's unlawful use and potential violations of California's insurance statutes during the deposition of Jimmy Silva on June 4, 2014 and again at the deposition of Jaime Silva on June 5, 2014; (2) the "meet and confer" of August 21, 2014 regarding this motion involved this issue three weeks after discovery cutoff and two weeks before this motion was filed; and (3) VAIS served its expert witness report of David Fortman on September 10, 2014 (the day after Veronica's filed this motion) which *for the first time in writing* discussed alleged advertising violations by Veronica's.[9]

---

[8] *Travelers Ins. Co.,* 735 F.Supp. at 492, 495-496.

[9] Curiously, VAIS also argues that Veronica's should be faulted for the surprise due to its "own premature filing of its motion, and failure to complete all discovery before filing its motion", which was filed before the October 23, 2014 deadline for dispositive motions.  Sur-Reply at 5.  The Court should not accept VAIS' suggestion that Veronica's should have waited until the *final deadline* to file its Motion—particularly where fact discovery cutoff had long passed on July 31, 2014, without VAIS producing a *single* document showing alleged Insurance Code

(continued…)

5

VAIS is wrong.  Mere vague and passing references to Jaime Silva's licensure and advertising during depositions was insufficient to notify Veronica's of *specific alleged Insurance Code violations or VAIS "unlawful use in commerce" theory*.  That is especially so since VAIS' expressly objected to producing documents relating to its affirmative defenses such as unclean hands since they were *irrelevant*.  Further, when Veronica's requested VAIS' prior counsel to produce documents on those issues, he represented "**we don't have any.**"[10]

---

(…continued)
violations, and where VAIS had *affirmatively represented* no such documents existed.  Veronica's was entitled to rely on Court's firm discovery cutoff date and thus, filed its motion assuming no "surprise" documents would thereafter be produced.  Veronica's assumption the Insurance Code is not at issue was buttressed by VAIS' failure to plead any Insurance Code violations in its complaint or answer, its failure to amend its pleadings, its objection to producing documents on *relevancy* grounds, and its failure to timely supplement its initial disclosures.  In short, Veronica's was fully entitled to file its Motion on September 9, 2014 without expecting to be met with surprise factual allegations, a late production of documents and a previously unpled theory; all of these violate federal pleading and discovery rules specifically designed to avoid such a situation.

[10] VAIS' prior counsel, Gordon E. Gray, has misrepresented this conversation in his declaration filed on October 14, 2014, stating:

> I told Mr. de Almeida at that time that VAIS had no documents for production proving VSI's unlawful use of the VERONICA'S SERVICES mark **because the relevant documents naturally belong to, or are possessed by, VSI, not VAIS.**

Declaration of Gordon Gray in Support of Opposition to Counter-Claimant's Motion for Partial Summary Judgment, ¶ 4 (emphasis added).

Mr. Gray never stated that the "relevant documents naturally belong to, or are possessed by, VSI, not VAIS".  He only stated, "we don't have any".  Supplemental Declaration of Paulo A. de Almeida, ¶ 9, Ex. G (email confirming Mr. Gray's concession that no documents exist.).  VAIS's prior counsel has previously misstated facts, including alleging in the complaint that VAIS' "first use" of "Veronica's" for auto insurance was in 2007, a date now proven to be false and as

(continued…)

6

Moreover, even a cursory review of the deposition transcripts discloses VAIS' counsel asked only a few general questions about Mr. Silva's insurance license and his advertising.  <u>VAIS, however, never accused him of violating any specific code section or regulation</u>.  To undercut a potential "smear" campaign by VAIS designed to later mislead a jury, Veronica's counsel asked him to confirm he had never violated any rules.  In response, Mr. Silva confirmed he did not.  <u>No one</u> discussed the issue thereafter.  Indeed, no one ever alluded—even vaguely—to any Insurance Code violation until the meet and confer held shortly before this Motion was filed.

When VAIS' counsel first raised the issue of Insurance Code violations during the telephonic meet and confer of August 21, 2014, Veronica's was clearly surprised.  Fact discovery had closed on July 31, 2014.  VAIS had produced no documents relating to alleged violations.  VAIS counsel had first represented they were irrelevant, and then, that no such documents existed.  Untimely raising accusations which were unpled (and then, belatedly producing documents) could not cure the fatal deficiencies in VAIS' pleadings or its cavalier approach to the discovery rules.  Nor did this discussion—occurring after Veronica's had

---

(…continued)
<u>late as 2011</u>.  VAIS' prior counsel also obstructed discovery, including raising frivolous objections and refusing to even discuss them unless Veronica's followed the costly and time consuming motion to compel procedures of Local Rule 37. After promising and then subsequently refusing to produce documents in violation of a Rule 37 meet and confer agreement, he failed to produce Laura Veronica Gallardo, Adriana Gallardo, and Zaira Fernandez for their *own* depositions. (In that context, he raised frivolous objections the latter two were "non-parties" although their titles were CEO and "director of operations" of the counter-defendant corporations. He also claimed all three were separately on "vacation" when their depositions were noticed and ultimately forced Veronica's to file a motion to compel; *see generally*, Dkt. No. 28).  The only explanation for such conduct is that it was designed to cover up VAIS' false allegation of a 2007 "first use" date which, of course, lies at the heart of this litigation.

OPPOSITION TO COUNTER-DEFENDANTS' EX PARTE APPLICATION FOR LEAVE TO FILE A SUR-REPLY

substantially completed its Motion— require Veronica's to anticipate and address VAIS' unpled allegations raised after discovery cutoff, particularly when it failed to produce any documents and conceded none existed.[11]  An oral comment about an alleged Insurance Code violation made after the close of discovery and without any context, is simply too little, too late.

VAIS' also argues that the expert discovery cutoff had not passed when Veronica's filed its Motion, and VAIS dumped its "expert report" of David Fortman on Veronica's the following day.  Somehow, that expert report, VAIS argues, negates the surprise and unfair prejudice to Veronica's arising from its belated raising of unpled, un-litigated factual allegations.  VAIS' contention is specious. First, Veronica's would have addressed Mr. Fortman's speculations in its Motion had the alleged violations been timely disclosed.  Second, at bottom, VAIS was obliged to provide Veronica's with notice of all advertising violations during the *pleading stage* and *at least* before discovery cutoff on July 31, 2014.  To the extent that Mr. Fortman's "expert" report identifies new facts unsupported by timely produced documents, the new purported facts forming the basis of the expert report were not disclosed before fact discovery cutoff; thus, they may not be considered.

---

[11] Nevertheless, as a result of the meet and confer, Veronica's briefly raised and dismissed the alleged Insurance Code violations in its motion:

> VAIS' Complaint alleges that Veronica's use of VERONICA'S SERVICES was "unlawful" because "defendant did not become licensed to provide insurance in California under the name VERONICA'S SERVICES, INC. until March 10, 2009." Complaint at ¶¶ 12-13.  However, Jaime Silva was *always* licensed to provide insurance between 1998 and the present, including during the period between June of 2008-March of 2009, while Veronica's was in the process of obtaining its separate corporate license. Jaime Decl., ¶ 17. Thus, Veronica's use of the mark was lawful because Jaime Silva was licensed at all times when he provided insurance on behalf of the company.  Reply at 3-4, fn. 4.

Third, VAIS never disclosed the subjects on which its "expert" was to testify until September 10, 2014, i.e., "unlawful use in commerce". That, however, was <u>the day after</u> Veronica's filed its Motion.  Because Veronica's was never notified of any Insurance Code violations or even the general topics of the expert reports until well after discovery cutoff, Veronica's properly filed its Motion without addressing that issue in this litigation.  Veronica's was not, as VAIS argues, obliged to wait until the close of expert discovery (or dispositive motion cutoff) to file its Motion safely assuming that "unlawful use in commerce" was not an issue.  In short, VAIS never timely notified Veronica's of its surprise new theory or factual allegations; thus, VAIS cannot belatedly raise that issue.

### ii.  <u>VAIS failed to produce documents or supplement its disclosures in discovery; exclusion is mandatory under F.R.C.P. 26(e)</u>

VAIS hopes that this Court will consider documents produced after the close of discovery, citing *Trouble v. Wet Seal, Inc.*, 179 F. Supp 2d 291, 297 (S.D.N.Y. 2001)(four factor test for excluding late produced documents).  Aside from the fact that *Wet Seal* is inapplicable here, where VAIS objected to production on relevancy grounds and then affirmatively represented that no documents exist, *see supra*, p. 5, fn. 7, VAIS applies the wrong standard for exclusion of late-produced documents.

Federal Rule of Procedure 26(e)—relating to the failure to timely supplement initial disclosures—not *Trouble*, governs this situation.[12]  VAIS failure to timely supplement its initial disclosures with categories of new information and documents until September 8, 2014 (more than 1 month after the close of discovery),[13] especially when it represented that no requested documents exist, is not

---

[12] *See, e.g.*, *Am. Stock Exch. v. Mopex, Inc.*, 215 F.R.D. 87, 94-95 (S.D.N.Y. 2002) (applying Rule 26(e) and thus precluding new factual contentions first raised after the close of discovery).

[13] *See* Supplemental Declaration of Paulo A. de Almeida, ¶ 10, Ex. H.

"substantially justified" or "harmless" under Rule 37(C).[14]  The evidence shows that VAIS simply withheld documents or failed to make any effort to obtain and produce them prior to the close of discovery.[15]  VAIS bears the burden of proving that its failure was "substantially justified" or "harmless", but it cannot do so here.[16] There is no excuse for the late introduction of surprise documents, and they <u>must</u> be excluded under the self-executing, automatic exclusion sanction of Rule 37(c).[17]

_____

[14] "If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless".  Federal Rule of Civil Procedure 37(c); *see Yeti By Molly, Ltd. v. Deckers Outdoor Corp.* 259 F3d 1101, 1106 (9th Cir. 2001); *see also Salgado v. General Motors Corp.,* 150 F.3d 735, 741-42 (7th Cir.1998).

[15] As explained in Veronica's Reply, p. 6, fn. 17, VAIS post-discovery-cutoff Rule 45 subpoena to the DOI was improper, and documents produced in response thereto should be excluded as both untimely requested and produced.  *Marvin Lumber and Cedar Co. v. PPG Industries, Inc*. 177 F.R.D. 443 (D. Minn. 1997) (Rule 45 subpoenas are subject to the same time constraints that apply to all of the other methods of formal discovery).

[16] In an attempt to explain its failure to diligently conduct discovery and timely produce documents before cutoff, VAIS tries to shift the blame to Veronica's for its own failures.  VAIS argues that Veronica's should have produced its old 2008-2009 insurance license applications in discovery, even though VAIS never requested *insurance license applications* in discovery.  Moreover, Veronica's raised numerous valid objections to VAIS' discovery requests, and VAIS <u>never</u> challenged or even commented on the objections.  Most importantly, Veronica's simply does not possess its old insurance license applications from 2008-2009 and could not have produced them, even upon request.  Nor was Veronica's legally obligated to "request" these documents from the DOI, particularly when the documents are not relevant to any of the pleaded issues in this case and were not contemplated by *either party* as potentially relevant.

    The fact that VAIS hired new counsel *after the close of discovery* who later (mistakenly) decided that insurance license applications are relevant does not justify VAIS' untimely, post-discovery-cutoff subpoena to the DOI, failure to timely supplement its initial disclosures, and failure to timely produce documents. VAIS, *not Veronica's*, is entirely at fault for its current situation.

[17] *Yeti By Molly, supra,* 259 F3d at 1106.

10

### iii.    VAIS' Attempt to regulate Veronica's Advertising Through the Lanham Act Violates the McCarran-Ferguson Act

As Veronica's Reply brief outlined, the McCarran-Ferguson Act bars VAIS from gaining control over the "Veronica's" mark based on its "unlawful use in commerce" theory for a basic reason: that Act precludes interference or impairment of state law regulating the business of insurance by general federal statues such as the Lanham Act.  The Supreme Court has explained that the states, not federal agencies, regulate advertising by those in the insurance business.

### a) VAIS' Theory About a "Modern Framework of Analysis" Cannot Overrule Controlling Supreme Court Precedent

VAIS, based on its "modern framework of analysis,"[18] theorizes this Court should ignore controlling Supreme Court authority interpreting the McCarran-Ferguson Act.  VAIS, however, fails to cite any legal authority holding this Court, through the Lanham Act, can enforce advertising restrictions in the Insurance Code and DOI regulations despite the McCarran-Ferguson Act.  Nor could VAIS do so since Supreme Court decisions guide the lower courts.   As the Ninth Circuit has explained, "A decision of the Supreme Court will control that corner of the law unless and until the Supreme Court itself overrules or modifies it. Judges of the inferior courts may voice their criticisms, but follow it they must."[19]

The Supreme Court, with rhythmic regularity, has explained Section 2(b) of the McCarran-Ferguson Act[20] vests control over advertising by licensees in the

---

[18] Sur-reply, 5:17

[19] *Hart v. Massanari,* 266 F.3d 1155 (9th Cir. 2001).

[20] Section 2 (b) (15 U.S.C. § 1012) of the McCarran-Ferguson Act provides:

> (b) Federal regulation. No Act of Congress shall be construed to invalidate, impair, or supersede any law enacted by any State for the

(continued...)

11

business of insurance in the states, not federal agencies or courts.  In sum, while the Lanham Act may regulate ownership of trademarks, the DOI—through the Insurance Code and DOI regulations—controls advertising of its licensees.  As discussed in Veronica's Reply, the Supreme Court has held such state control over advertising is exclusive in *FTC v. National Casualty Co*.,[21] and *SEC v. National Sec., Inc*.[22]  Similarly, the DOI has exclusive jurisdiction over the licensing of brokers under *Robertson v. California*.[23]

And the Supreme Court continues to recognize the McCarran-Ferguson Act indicates state control over the regulation of advertising remains in effect.  Thus, in *Group Life & Health Ins. Co. v. Royal Drug Co*.,[24] the Supreme Court reiterated, in rejecting a narrow concept of the term "business of insurance" that:

> The argument fails in light of this Court's prior decisions and the legislative history of the Act. The Court has held, for example, *FTC v. National Casualty Co.*, 357 U.S. 560 (1958), that the advertising of insurance, a unilateral act which does not involve underwriting, is within the scope of the McCarran-Ferguson Act.[25]

Not surprisingly, based on such Supreme Court authority, the Ninth Circuit has similarly held the term "business of "insurance" in Section 2(b) of the McCarran-Ferguson Act includes state regulation of advertising, explaining:

> The phrase 'business of insurance' refers to 'the relationship between the insurance company and the policyholder' and includes 'the fixing of rates[,] . . . the selling and advertising of policies, and the licensing of

_____

(…continued)

> purpose of regulating the business of insurance . . . business, unless such Act specifically relates to the business of insurance.

[21] *FTC v. National Casualty Co*., 357 U.S. 560 (1958).

[22] *SEC v. National Sec., Inc*., 393 U.S. 453 (1969).

[23] *Robertson v. California*, 328 U.S. 440 (1946).

[24] *Group Life & Health Ins. Co. v. Royal Drug Co*., 440 U.S. 205, 244 (1979).

[25] *Id.* at 244.

12

companies and their agents.' *SEC v. National Sec., Inc*., 393 U.S. 453, 460, 89 S. Ct. 564, 21 L. Ed. 2d 668 (1969).[26]

VAIS speculates the Supreme Court's decision in *United Labor Life Ins. Co. v. Pireno*,[27]—based on the court's interpretation of the term "business of insurance" in as to antitrust issues—might have somehow impacted the binding effect of its decisions holding enforcement of advertising is subject to exclusive state control.[28] VAIS, however, *fails to cite any appellate or district court decision* holding *Pireno* had reversed the Supreme Court's prior explicit holdings that the states have exclusive control advertising by insurance licensees.  Rather, as summarized by the court in *Colonial Life & Accident Ins. Co. v. American Family Life Assurance Co*.,[29] in the course of dismissing a false advertising claim against an insurance company, state jurisdiction over the regulation of advertising remains exclusive:

> One commentator, to whom the Supreme Court cited favorably in *Fabe*, has noted that advertising is 'so clearly part of the " 'business of insurance' " that recent opinions see no need to reaffirm this.' Howard, Uncle Sam Versus The Insurance Commissioners: A Multi-Level Approach To Defining The "Business of Insurance" Under The McCarran-Ferguson Act, 25 Willamette L. Rev. 1 (1989) (cited at 113 S. Ct. at 2210).[30]

In short, California's regulation of false advertising claims is exclusive even if this court has jurisdiction to determine who was the first user and thus, the owner of the mark under the Lanham Act.

---

[26] *Gerling Global Reinsurance Corp. v. Low*, 240 F.3d 739, 744 (9th Cir. 2001).

[27] *United Labor Life Insurance Co. v. Pireno*, 458 U.S. 119, 129 (1982).

[28] Sur-reply Brief  6:18-19, 6 fn. 4,

[29] *Colonial Life & Accident Ins. Co. v. American Family Life Assurance Co.*, 846 F. Supp. 454 (D.S.C. 1994).

[30] *Id*., at 460.

**b) Because certain VAIS citations fail to discuss or even mention the McCarran-Ferguson Act, they fail to address the preemption issue and thus, should be disregarded.**

As noted above, although only the DOI has exclusive jurisdiction to enforce the Insurance Code and DOI regulations governing advertising, this Court has jurisdiction to decide who was the senior use of the "Veronica's" trademark and thus, determine the owner of the mark.  Notably, VAIS focuses on one issue, i.e., the trademark, but ignores the other, i.e., regulation of advertising.  Thus, VAIS, after citing a number of decisions,[31] asserts *ex cathedra*: "courts routinely decide Lanham Act cases involving conduct regulated by insurance laws without even mentioning or—let alone applying—the McCarran Ferguson Act."[32]

Plainly, this Court may disregard every one of those citations since none of them discuss the dispositive legal issue, i.e., the controlling effect of the McCarran-Ferguson Act.  The justification for ignoring such decisions—which fail to discuss the legal point at issue—has be succinctly stated: "Since the issue now before us was not decided by those cases, they are not binding authority."[33]  *Put another way, since VAIS admits[34] none of those decisions or even cites the McCarran-Ferguson Act, those citations are of no consequence to this hearing.*  Similarly, VAIS' citation

---

[31] *Highmark, Inc. v. UPMC Health Plan, Inc*., 276 F.3d 160 (3rd Cir. 2001); *Wells Fargo & Co. v. ABD Ins. & Fin. Servs., Inc*., 758 F.3d 1069, 1071 (9th Cir. 2014); *Arch Ins. Co. v. Allegiant Professional Services, Inc*., 2012 WL 5182891 (C.D. Cal. 2012); *MDM Grp.Associates, Inc. v. Emerald Isle Realty, Inc.,* 2008 WL 2641271 (E.D.N.C. 2008); *Nationwide Mut. Ins. Co. v. Tri-Cont'l Exch., Ltd*., 2001 WL 34398158 (C.D. Cal. 2001); *Murphy v. Provident Mut. Life Ins. Co. of Philadelphia*, 756 F. Supp. 83, 85 (D. Conn. 1990) aff'd, 923 F.2d 923 (2d Cir. 1990).

[32] Sur-reply Brief 4:2-4

[33] *Pfizer, Inc. v. Teva Pharms. USA, Inc.,* 518 F.3d 1353, 1361 (Fed. Cir. 2008).

[34] Sur-reply Brief 4:3-4.

14

1 of a decision issued before the Supreme Court had rendered any of the decisions

2 such as *FTC* noted above is equally irrelevant.[35]  In short, all of these citations are

3 beside the point.

### c) Section 2(b) of the McCarran Ferguson Act specifically preempts any general federal statute which "invalidates, impairs, or supersedes" a state law regulating the business of insurance.

7 The Supreme Court has explained the term "impair" in the McCarran-

8 Ferguson Act precludes any interference or frustration of state administrative

9 regimes governing the business of insurance.  Stated otherwise, a general federal

10 statute can apply to the business of insurance only if that statute does not disturb the

11 state's administrative regime.  The court stated:

12 When federal law is applied in aid or enhancement of state regulation, and
13 does not frustrate any declared state policy or disturb the State's
   administrative regime, the McCarran-Ferguson Act does not bar the federal
14 action.[36]

15 As discussed in Veronica's reply brief (at pp. 12-14), because the DOI has exclusive

16 jurisdiction to regulate advertising of its licensees, no one can bypass the DOI's

17 jurisdiction by filing a court action over such issues as the names a licensee can

18 use.[37]  And as the Reply brief also discussed (at pp. 12-13), since the DOI"s

19 jurisdiction is exclusive, litigants cannot use the Insurance Code or the DOI

20 regulations as a basis for filing a civil suit and thus, bypass the Commissioner.[38]

21 *Notably, VAIS fails to cite a single decision holding the California administrative*

22 *regime governing advertising or the DOI's jurisdiction to enforce the Insurance*

23 *Code and regulations can be bypassed by filing a Lanham Act suit.  Nor does VAIS*

24

25 [35] *Sears, Roebuck & Co.v. All States Life Ins. Co*., 246 F.2d 161 (5th Cir.
26 [36] *Humana Inc. v. Forsyth*, 525 U.S. 299 (1999)
   [37] *See e.g., Huber v. Barger*, 25 Cal.App.3d 1092 (1972).
27 [38] *See e.g., Crusader Ins. Co. v. Scottsdale Ins. Co,* 54 Cal.App.4th 121
28 (1997).

OPPOSITION TO COUNTER-DEFENDANTS' EX PARTE APPLICATION FOR LEAVE TO FILE A SUR-
REPLY

*cite any legal authority indicating the advertising provisions of the Insurance Code or DOI regulations can form the basis for an infringement action (or prevent Veronica's from establishing trademark rights) under the Lanham Act.*

Nor could VAIS do so.  As the court explained in its exhaustive opinion in *Colonial Life & Accident Ins. Co. v. American Family Life Assurance Co.,* states have exclusive jurisdiction to regulate advertising by insurance carriers even if the Lanham Act provides jurisdiction to the federal courts over  ownership of trade and service marks.  Considering whether an insurance carrier's federally-registered service mark, "THE LEADER IN PAYROLL MARKETING" was subject to suit in federal court as false and deceptive advertising, the court  dismissed the claim because of the reverse-preemption of the McCarran-Ferguson Act, explaining:

> The Court concludes that under *National Securities* and *Fabe*, state laws regulating advertising are encompassed within the scope of the first clause of Section 2(b) since advertising clearly appears to the Court to affect the relationship between the insurer and insured. Moreover, as noted, the Supreme Court expressly stated in *National Securities* that advertising by insurance companies is within the scope of the first clause of the McCarran-Ferguson Act.  While the Supreme Court did not restate this principle in *Fabe*, there is nothing in that opinion which is inconsistent with, or otherwise calls it into question.  Furthermore, without examining whether *National Casualty* has been implicitly overruled as defendant contends, the Court notes that the holding in that case supports this conclusion since, in that case, the Supreme Court found advertising to constitute the 'business of insurance' under the more restrictive analysis of the antitrust exemption of Section 2(b).[39]

VAIS fails to discuss cases focusing on state control over advertising by people in the business of insurance such as *Colonial Life.*  Instead, VAIS cites decisions discussing whether fraud or unfair competition claims are pre-empted by the McCarran-Ferguson Act.  Those decisions are plainly beside the point since

---

[39] *Colonial Life & Accident Ins. Co. v. American Family Life Assurance Co.,supra,* 846 F.Supp. at 460.

unlike California—where the DOI's jurisdiction over advertising is exclusive—decisions in other states may conclude a Lanham Act unfair competition suit may be consistent with an existing, similar state law remedy for fraud.  Thus, the courts in those states can conclude such a suit would not disrupt the state administrative regime.  For example, VAIS repetitively cites a Pennsylvania decision, i.e., *Highmark, Inc. v. UPMC Health Plan, Inc*.[40]  In *Highmark,* the court held Pennsylvania insurance practices statute, unlike California, did not foreclose unfair completion suits since "state law precedent indicates that such claims would be allowed [under state law]."[41]  Similarly, in *Axiom Ins. Managers Agency, LLC v. Indmenity Ins. Corp.*, 2011 WL 3876947 (N.D. Ill. 2011), the court recognized Illinois law, unlike California, would permit such a private suit; thus the McCarran-Ferguson Act did not bar the suit.  And, in *Sun Life Assurance Co. of Canada v. SunAmerica, Inc.*,[42] 45 U.S.P.Q.2d 1621 (N.D. Ga. 1997), the court indicated, in the context of a dispute over the ownership of a name, the "instant case presents no direct conflict between the state regulations and the federal statute."[43]  In the case at bar, however, applying the Lanham Act as a remedy for alleged violations of the Insurance Code and DOI regulations governing advertising would directly conflict with the DOI's exclusive jurisdiction to deal with that issue.  Finally, the decision in *USLIFE Corp. v. U.S. Life Ins. Co*.,[44] which VAIS cites extensively, highlights the difference between, on the one hand, trademark issues and, on the other, interference with state control of advertising in the insurance business.  The court, after acknowledging the controlling effect of the Supreme Court's decision in *FTC*

---

[40] *Highmark, Inc. v. UPMC Health Plan, Inc*., 276 F.3d 160 (3d Cir. 2001)
[41] *Id*., at 170.
[42] *Sun Life Assurance Co. of Canada v. SunAmerica, Inc.*, 45 U.S.P.Q.2d 1621 (N.D. Ga. 1997).
[43] *Id.,* at *8.
[44] *USLIFE Corp. v. U.S. Life Ins. Co.,* 560 F.Supp. 1302 (N.D. Tex. 1983).

17

*v. National Casualty Co.* as to state regulation of advertising issues, stated in relevant part:

> Defendant's argument is not persuasive in this case. The *National Casualty* decision dealt only with advertising practices; it did not deal with trademarks or service marks. *The advertising practices of insurance companies might be regarded as closer to the core of the relationship between the insurer and the insured than the name or service mark under which an insurance company operates.*[45]

The court's distinction in *USLIFE Corp.* between "advertising practices" and ownership of "trademarks or service marks" applies directly to the case at bar. Following *USLIFE*, a federal court under *National Casualty* has no jurisdiction to review Veronica's (or VAIS') advertising (including alleged violations of the Insurance Code and DOI regulations). Nonetheless, that court would have jurisdiction to decide who, VAIS or Veronica's, is the senior use of "Veronica's" and thus, entitled to ownership of the trademark under the Lanham Act.

### d) California has vested exclusive jurisdiction in the DOI to determine whether the Insurance Code or the DOI regulations have been violated.

Simply put, VAIS—despite its protestations to the contrary—seeks to have this court use the Lanham Act to determine whether Veronica's violated the Insurance Code and DOI regulations governing advertising. Then, were this court to find Veronica's violated the advertising regulations, VAIS would demand this court transfer control of the "Veronica's" trademark to VAIS although VAIS is the junior user. That is plainly improper.

- As outlined in Veronica's reply brief and noted above, California vests exclusive jurisdiction over advertising issues such as violations of the Insurance Code and DOI regulations regarding advertising must resort to the

---

[45] *Id.*, at 1308. (emphasis added).

Commissioner for review.[46]  Further, in California unlike other states, litigants cannot posit civil actions on the theory that the advertising violates the Insurance Code or the DOI regulations.[47]   Even if other states – such as Illinois and Pennsylvania – conclude otherwise, VAIS is governed by California law, not the law of Illinois or Pennsylvania.

• Although VAIS cites decisions holding a RICO claim may be brought against an entity in the business of insurance, those citations miss the mark for a basic reason: not one such decision involved a potential conflict with the jurisdiction of the DOI.  Rather, the courts in every such decision concluded a RICO remedy would be similar to existing state remedies and thus, not conflict with state law.

Thus, In *Merchants Home Delivery Serv. v. Frank B. Hall & Co*.,[48] the Ninth Circuit observed: "As RICO prohibits these same acts [as state law], there is no conflict; RICO does not invalidate, impair, or supersede California law in this context."[49]  And the court, when concluding McCarran-Ferguson did not prevent the claimants from pursuing a RICO remedy in *Negrete v. Allianz Life Ins. Co. of N. Am.*,[50] the court held each of the states involved in that litigation, "in their insurance code . . . expressly preserves the rights of policyholders and insurance commissioners to pursue other remedies under statutory or common law."[51]  Finally, the court in *In re Nat'l Western Life Ins. Deferred Annuities Litig*.,[52] made

---

[46] *Huber v. Barger*, 25 Cal.App.3d 1092 (1972).

[47] *Crusader Ins. Co. v. Scottsdale Ins. Co,* 54 Cal.App.4th 121 (1997).

[48] *Merchants Home Delivery Serv. v. Frank B. Hall & Co*., 50 F.3d 1486 (9th Cir. 1995).

[49] *Id.*, at 1492.

[50] *Negrete v. Allianz Life Ins. Co. of N. Am*., 927 F. Supp. 2d 870 (C.D. Cal. 2013).

[51] *Id.* at 886.

[52] *In re Nat'l Western Life Ins. Deferred Annuities Litig*., 467 F. Supp. 2d 1071 (S.D. Cal. 2006).

the same point: "although California may limit certain statutory remedies for certain claims under its insurance code, California still provides for a robust policy in favor of vindicating the rights of private plaintiffs damaged by an insurer's unlawful conduct."[53]

In short, if there is no conflict between a federal statute such as RICO and state insurance regulation—since as when both supply similar remedies for similar conduct—there is no conflict or impairment and McCarran-Ferguson does not apply.  If however the federal statute "impairs" or "frustrates" or "supersedes" state insurance regulation, McCarran-Ferguson establishes reverse preemption.  As noted above, California does not provide civil litigants with a civil remedy to enforce advertising rules embodied in the Insurance Code and DOI regulations; rather, all such disputes must be resolved by the Commissioner, not the courts.  Thus, unlike a RICO remedy—which would not impair or supersede the state administrative regime—allowing disputes over advertising issues to proceed under the rubric of the Lanham Act would violate the McCarran-Ferguson Act.  Hence, this Court has no jurisdiction to consider VAIS claims about Veronica's advertising.

### iv.    VAIS' repeated arguments regarding secondary meaning are meritless

VAIS, its Sur-reply brief, re-argues its point Veronica's mark has not acquired secondary meaning, albeit with a twist.  VAIS *now* argues that "[e]ven assuming, *arguendo*, that the June 2011 date is the date of VAIS' first use of the mark",[54] Veronica's cannot show secondary meaning because Gallardo has used "her own name *as the name of her business*" and further, "has been transacting

---

[53] *Id.* at 1089.

[54] Sur-reply at 14:12-13. This is an acknowledgement that VAIS falsely alleged in the complaint that its "first use" of "Veronica's" for auto insurance was in 2007.  VAIS' "Sur-reply" simply ignores the intentional misstatement of this key fact in the complaint.

insurance for over (14) years . . . [55].  VAIS thus concludes "VSI must prove its mark acquired secondary meaning *before* Veronica began using her name *as the name of her business*."[56]

VAIS, in so arguing, misrepresents the facts and the law.  VAIS admitted it never used the "Veronica's" mark to sell auto insurance until 2011.  **Gallardo's general history of working in the insurance business – but where she failed to use,  display, or sell insurance under the Veronica's mark before 2011—is irrelevant**.  Trademark rights are established only by actual sales and advertising of services, not acquiring an insurance license, forming a corporation, or registering a domain name.[57]  Accordingly, the declarations of Laura Gallardo and Zaira Fernandez are irrelevant because Veronica's history in the insurance industry shows that she did not use the mark until 2011.

To the extent VAIS bases its claimed trademark rights on the USPTO's registration,[58] this court must cancel that registration because Veronica's used the mark first.  Although Gallardo also argues she should not be barred from using her "own name" to sell insurance, the Court should take judicial notice that "Veronica" is Gallardo's *middle name,* <u>not</u> her first name.  Moreover, since a *corporation*, i.e., VAIS, is using the mark, this Court should show no reluctance to enjoin its use of Veronica's mark.  Moreover, Gallardo invited this Court to consider that VAIS, as the junior user, might be enjoined from continuing to use that mark by filing this infringement action, prompting counterclaims for infringement.

VAIS also argues the mark "Veronica's" could not have acquired a secondary meaning because Veronica's use was "unlawful."  Since Veronica's use of the mark

---

[55] Sur-reply at 12:16-17 (emphasis added).
[56] Sur-reply at 13:11-12 (emphasis added).
[57] *Emergency One, Inc. v. Am. Fire Eagle Engine Co*., 332 F.3d 264, 267, 268 (4th Cir. 2003)
[58] Sur-reply at 13:13-15.

OPPOSITION TO COUNTER-DEFENDANTS' EX PARTE APPLICATION FOR LEAVE TO FILE A SUR-REPLY

—which began before VAIS'—was lawful, this Court should resolve that issue on the basic *first-in-time*, *first-in-right* rule and Veronica's extensive use of the mark for at least nearly 10 years, demonstrating valuable secondary meaning in the mark.

Finally, VAIS asserts Veronica's cannot establish a secondary meaning because the mark is not as well-known as PAUL FRANK, GALLO and GUCCI.[59] At bottom, VAIS mischaracterizes the law of secondary meaning. Generally, the Lanham Act and the USPTO require only *five* years of continuous, substantially exclusive use of a surname to establish the creation of a secondary meaning.[60] And further, VAIS—after Veronica's used the mark for many years—cannot take advantage of its wrongful, infringing conduct to assert its junior use somehow detracts from Veronica's acquired distinctiveness.[61]

Although this case involves a middle name, not a surname, analysis of secondary meaning (i.e., consumer recognition) is the same as under Section 2(f) of the Lanham Act. Greatly exceeding the five year minimum, Veronica's has

---

[59] Sur-Reply,15:1-8, fn. 16.

[60] Section 2(f) of the Lanham Act, 15 U.S.C. §1052(f), provides that "proof of substantially exclusive and continuous use" of a designation "as a mark by the applicant in commerce for the five years before the date on which the claim of distinctiveness is made" is acceptable as prima facie evidence that the mark has acquired distinctiveness as used with the applicant's goods or services in commerce. *See also* 37 C.F.R. §2.41(b). For most surnames, an applicant's statement that it has used the surname substantially exclusively for five (5) years in commerce will be sufficient to establish acquired distinctiveness. *See* Trademark Manual of Examining Procedure, §1212.05(a).

[61] *See L.D. Kichler Co. v. Davoil, Inc.*, 192 F.3d 1349, 1352, 52 USPQ2d 1307, 1309 (Fed. Cir. 1999) ("The five years of use does not have to be exclusive, but may be 'substantially' exclusive. This makes allowance for use by others which may be inconsequential or infringing and which therefore does not necessarily invalidate the applicant's claim"); *see also Yamaha Int'l Corp. v. Hoshino Gakki Co.*, 840 F.2d 1572, 1583, 6 U.S.P.Q.2D (BNA) 1001, 1010 (Fed. Cir. 1988) (affirming Trademark Trial and Appeal Board's rejection of section 2(f) opposition, in spite of evidence that four other companies made similar products prior to registration).

demonstrated almost ten years of continuous, substantially exclusive use of Veronica's to sell auto insurance.  It earned more than $1,000,000 through sales of insurance, spent $150,000 in advertising, obtained extensive word of mouth advertising, and gained thousands of loyal, repeat customers.  That is the valuable secondary meaning VAIS now attempts to seize in this action.  Moreover, no other third-party (other than VAIS'—a junior infringer) used the mark to sell auto insurance.  In short, <u>for almost a decade – until VAIS starting infringing the mark in 2011 – consumers recognized only one source of insurance associated with the "Veronica's" mark, i.e., *Veronica's Services*</u>.[62]

## 2.  VAIS Is Entirely At Fault for Its Current Situation

VAIS disregarded basic pleading and discovery rules; surprised Veronica's with last-minute allegations of Insurance Code violations; and failed to anticipate and address Veronica's obvious response to its newly-minted theory of "unlawful use in commerce."  Nonetheless, VAIS demands this court permit it to file 32 pages of meritless sur-reply.  Initially, VAIS places an enormous and unwarranted burden on Veronica's to immediately respond on an "emergency" basis.  VAIS thus compounds the prejudice it has already improperly inflicted on Veronica's.

At bottom, however, VAIS is entirely at fault for creating this situation. VAIS should have pled the issue.  VAIS should have included its contentions such as those relating to the McCarran-Ferguson Act in its Opposition.  VAIS establishes no legal basis for its repetition of arguments it previously made. In sum, VAIS presents no basis for filing a 32-page "Sur-Reply."   Because VAIS created this situation, this court should deny its request to file that brief.

---

[62] But the Court need not analyze secondary meaning at all because the parties and the USPTO agree that "Veronica's" is inherently distinctive for auto insurance services.

OPPOSITION TO COUNTER-DEFENDANTS' EX PARTE APPLICATION FOR LEAVE TO FILE A SUR-REPLY

1

**III.     CONCLUSION**

2

     Based on the foregoing, VAIS' *Ex Parte* Application should be denied and

3

the "Sur-Reply" should not be considered.

4

5

Dated:  October 15, 2014              ADLER LAW GROUP
                                     ERWIN E. ADLER

6

                                     PATEL & ALMEIDA, P.C.
                                     ALEX D. PATEL

7

                                     PAULO A. DE ALMEIDA

8

9

                                     By: /Paulo A. de Almeida/
                                        Paulo A. de Almeida

10

11

                                     Attorneys for Defendant and
                                     Counterclaimant,

12

                                     VERONICA'S SERVICES, INC.

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

OPPOSITION TO COUNTER-DEFENDANTS' EX PARTE APPLICATION FOR LEAVE TO FILE A SUR-REPLY