PATEL & ALMEIDA, P.C.
ALEX D. PATEL (State Bar No. 201875)
alex@patelalmeida.com
PAULO A. DE ALMEIDA (State Bar No.279168)
paulo@patelalmeida.com
16830 Ventura Blvd., Suite 360
Encino, CA 91436
Telephone: 818.380.1900

ADLER LAW GROUP
ERWIN E. ADLER (State Bar No. 040638)
eadler@adlerlawgroup.com
350 S. Figueroa, Suite 557
Los Angeles, CA. 90071
Telephone 213.893.3900
Fax 213.893.3910

Attorneys for Defendant and Counterclaimant,
VERONICA'S SERVICES, INC.

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

VERONICA'S AUTO INSURANCE SERVICES, INC., a California Corporation,

Plaintiff,

v.

VERONICA'S SERVICES, INC., a California corporation,

Defendant.

---

VERONICA'S SERVICES, INC., a California corporation,

Counterclaimant,

v.

VERONICA'S AUTO INSURANCE SERVICES, INC., et al.,

Counter-Defendants.

Case No. EDCV13-1327 DDP (DTBx)

*Assigned to Courtroom 3*
*The Hon. Dean D. Pregerson*

**VERONICA'S BRIEF IN OPPOSITION TO VAIS' MOTION FOR PARTIAL SUMMARY JUDGMENT**

DATE: November 24, 2014
TIME: 10:00 a.m.
JUDGE: Hon. Dean D. Pregerson
PLACE: Courtroom 3

*[Filed concurrently with Response to the Separate Statement of Facts; Declarations of Jaime Silva, Martha Silva, Jimmy Silva, Paulo A. de Almeida, Adrian Meza Servin, Donalberto Martinez, Joe Ballesteros, Circe L. Cox, and Evidentiary Objections]*

# TABLE OF CONTENTS

Page

I. SUMMARY OF ARGUMENT .......... 1

II. STATEMENT OF FACTS .......... 3

A The VERONICA'S SERVICES Mark is Successful .......... 3

B. VAIS Infringes the Veronica's Services Mark .......... 6

C VAIS Sued Veronica's Alleging a False Date of First Use. .......... 10

III. VAIS IS NOT ENTITLED TO SUMMARY JUDGMENT .......... 11

IV. VERONICA'S MARK IS INHERENTLY DISTINCTIVE .......... 11

V. VERONICA'S MARK HAS ACQUIRED SECONDARY MEANING .......... 15

1. Purchasers Associate the Mark with Veronica's .......... 17

2. Degree and Manner of Advertising .......... 18

3 Length and Manner of Use. .......... 20

4. Exclusivity of Use. .......... 21

5. Instances of Actual Confusion .......... 21

6. Evidence of Intentional or Exact Copying. .......... 22

VI. VERONICA'S HAS PROVEN ITS COUNTERCLAIMS .......... 24

VII. CONCLUSION .......... 25

# TABLE OF AUTHORITIES

## FEDERAL CASES

*American Title Ins. Co. v. Lacelaw Corp*. 861 F.2d 224 (9th Cir. 1988) ................ 2

*Am. Stock Exch. v. Mopex, Inc.*, 215 F.R.D. 87 (S.D.N.Y. 2002) ............................ 9

*Applied Info. Scis. Corp. v. eBay, Inc.*, 511 F.3d 966 (9th Cir. Cal. 2007) ............ 13

*Blumenthal Distrib. v. Exec. Chair, Inc.*, 2010 U.S. Dist. LEXIS 142193 (E.D.N.Y.2010) ............................................................ 17, 18, 20, 23

*Brooks Shoe Mfg. Co., Inc. v. Suave Shoe Corp.*, 716 F.2d 854 (11th Cir. 1983) ........................................................................................ 16, 21

*Cartier, Inc. v. Four Star Jewelry Creations, Inc.*, 348 F. Supp. 2d 217 (S.D.N.Y. 2004) ......................................................................... 16, 22

*Caliber Automotive Liquidators, Inc. v. Premier Chrysler. Jeep, Dodge, LLC*, 605 F.3d 931 (11th Cir. 2010) ...................................................... 16, 21

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986)...................................................... 11

*Devereaux v. Abbey*, 263 F.3d 1070 (9th Cir. 2001)............................................. 11

*GamerModz, LLC v. Golubev*, 2011 U.S. Dist. LEXIS 116608 (M.D. Fla. 2011) ............................................................................13, 15, 16, 18, 21, 22

*Levi Strauss & Co. v. Blue Bell, Inc.*, 632 F.2d 817 (9th Cir. 1980)................. 15, 23

*Levi Strauss & Co. v. Blue Bell, Inc.*, 778 F.2d 1352 (9th Cir. 1985)... 10, 15, 20, 21

*L.D. Kichler Co. v. Davoil, Inc.*, 192 F.3d 1349 (Fed. Cir. 1999) .................... 19, 21

*National Assn. of Gov't Employees v. City Pub. Serv. Bd.*, 40 F.3d 698 (5th Cir. 1994)........................................................................................... 11

*New York City Triathlon, LLC v. NYC Triathlon Club*, 704 F. Supp. 2d 305 (S.D.N.Y. 2010) ............................................................................... 20

*Peaceable Planet, Inc. v. Ty Inc.*, 362 F.3d 986 (7th Cir. 2004)........................ 13-14

*Pizzazz Pizza & Restaurant v. Taco Bell Corp.*, 642 F.Supp. 88 (S.D. Ohio 1986)........................................................................................... 19

*Ribot v. Farmers Ins. Group*, 2014 WL 2510883 (C.D. Cal. 2014) ........................ 11

*Sengoku Works Ltd. v. RMC Int'l, Ltd.*, 96 F.3d 1217 (9th Cir. 1996) .................... 24

*The Murphy Door Bed Co., Inc. v. Interior Sleep Systems, Inc.*, 874 F.2d 95, (2nd Cir. 1989) ........................................................................... 13

*Tommy Bahama Group, Inc. v. Sexton*, 2009 WL 4673863 (N.D. Cal. Dec. 3, 2009) ........................................................................... 23

*Transgo, Inc. v. Ajac Transmission Parts Corp.*, 768 F.2d 1001 (9th Cir. 1985) ........................................................................... 16, 22

*Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763 (1992) .................................. 11

*Vision Sports, Inc. v. Melville Corp.*, 888 F.2d 609 (9th Cir. 1989) ................. 16, 22

*Yamaha Int'l Corp. v. Hoshino Gakki Co.*, 840 F.2d 1572 (Fed. Cir. 1988) ........... 21

**FEDERAL STATUTES**

15 U.S.C. § 1125(a) ........................................................................... 24

15 U.S.C. §1052(f) ........................................................................... 20

15 U.S.C. § 1012 ........................................................................... 5

Fed. R. Civ. P. 26(e) ........................................................................... 5

Fed. R. Civ. P. 56(a) ........................................................................... 11

**OTHER AUTHORITIES**

2 McCarthy on Trademarks, § 13:3 ........................................................... 14

McCarthy § 19:48 ........................................................................... 13

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. SUMMARY OF ARGUMENT

VAIS, after responding to Veronica's motion for partial summary judgment, virtually repeats its earlier arguments in its newly-filed motion. Based on those same arguments, VAIS demands this court dismiss Veronica's *counterclaims*, contending – in contrast to the allegations in its own complaint – the "Veronica's" mark is *not protectable* as a service mark because (1) it is merely a "personal name" and (2) has not acquired secondary meaning.

VAIS' motion for partial summary judgment ("Motion") is virtually incomprehensible since *VAIS filed this lawsuit* against Veronica's ostensibly to enforce its right that very same mark. Thus, despite VAIS' repetitive contentions, this Court should deny them because VAIS is wrong.

***First***, both pending motions focus on a single mark, i.e., "Veronica's." VAIS has *admitted*, and the United States Patent and Trademark Office ("USPTO") has *agreed* the "Veronica's" mark is inherently distinctive for insurance services. VAIS' internally inconsistent argument – "Veronica's" is inherently distinctive and protectable as to VAIS but not as to Veronica's – makes no sense. Instead, this Court should hold, consistent with the parties' admission (and the USPTO's) conclusion, that this mark is inherently distinctive and thus, no analysis of secondary meaning is necessary.

***Second***, should the court determine – contrary to the parties' agreement and the USPTO's determination – that "Veronica's" is not inherently distinctive for selling insurance, Veronica's has nonetheless demonstrated it has a right to that mark. Initially, Veronica's is the senior use of the mark based on the first-in-time, first-in-right rule. And for over a decade before VAIS started using that mark in 2011, that mark had acquired a secondary meaning based upon the following:

- Beginning in 1994, Veronica's erected a sign on top of its office advertising its tax preparation and notary services using the mark VERONICA'S SERVICES. In 1998, it expanded its service offerings to include auto insurance. Thus, since 1998, it advertised its sales of insurance by "VERONICA'S SERVICES" to millions of motorists who drove past its Van Nuys Blvd. office. Since then, Veronica's has extensively advertised its mark by distributing flyers, t-shirts, stationary and calendars, and sending direct-mail advertisements to potential customers throughout Southern California; by print advertising in magazines and newspapers, such as *Pennysaver*; and by extensive word-of-mouth advertising and referrals by its own customers. That advertising – which cost Veronica's more than $150,000 – created loyal, repeat customers, generating over $1,000,000 in auto insurance sales between 2005-present *alone*.
- Veronica's loyal customers, as they confirm in their declarations, were misled and *actually confused* by VAIS, the junior user of the mark. That is so because VAIS, when it first appropriated Veronica's mark in 2011, used the *identical* typestyle and "V" logo design that Veronica's had used to identify that mark for years before VAIS even existed. VAIS copied Veronica's for the sole purpose of misdirecting Veronica's customers to its newly formed business.

The foregoing evidence is more than sufficient to show the VERONICA'S SERVICES mark is well known *at least* throughout Los Angeles County and neighboring Southern California counties and that the mark has acquired secondary meaning in the minds of consumers. For these reasons, and for the additional reasons set forth below, the Court should deny VAIS' Motion.

## II. STATEMENT OF FACTS

### A. The VERONICA'S SERVICES Mark is Successful.

In 1998, Jaime and Martha Silva began selling auto insurance under the "VERONICA'S SERVICES" mark.[1] They were a husband-and-wife proprietorship with Mr. Silva responsible for insurance sales.[2] Mr. Silva sold auto insurance pursuant to a license issued by the California Department of Insurance ("DOI").[3]

Using the "VERONICA'S SERVICES" mark, the Silvas sold thousands of policies. Numerous sales receipts they issued between 2005 and 2008 confirm they made sales under that mark.[4] The Silvas' revenues from selling auto insurance was significant and grew each year (approximately $62,611 in 2005; to $75,000 in 2006; to $111,268 in 2007; and to $88,894 in 2008).[5] Although customers were located primarily in Los Angeles County, they had customers throughout Southern California, including the surrounding counties of San Bernardino, Riverside, Kern, Orange, Ventura, and San Diego.[6]

The Silvas, to advertise their sales office on Van Nuys Blvd.—a very busy street in Pacoima—erected a large sign on the roof prominently displaying the "VERONICA'S SERVICES" mark in 1994.[7] And, although the appearance of that

---

[1] Declaration of Jaime Silva filed herewith in support of Opposition ("Jaime Decl."), ¶¶ 6, 9; Declaration of Joe Ballesteros ("Ballesteros Decl."), ¶ 4 (customer since 1998); Declaration of Adrian Meza Servin ("Servin Decl."), ¶ 4 (customer since 2002); Decl. of Donalberto Martinez ("Martinez Decl."), ¶ 4 (customer since around 2001); Declaration of Circe L. Cox ("Cox Decl."), ¶ 3-5 (business consultant who was not a customer, but referred her own clients and family members to Veronica's since 2001).

[2] Jaime Decl., ¶¶ 4-7.

[3] *Id.*, ¶ 7, Ex. C.

[4] Jaime Decl., ¶ 9; Ex. D (sales receipts dated 2005-2008); Declaration of Martha Silva filed herewith in support of Opposition ("Martha Decl."), at ¶ 8; Ex. A (customer list, 2006-2008). Most of the Silvas' receipts and other documentation of sales before 2005 have been lost or destroyed, but the Silvas began selling auto insurance using Veronica's Services much earlier in 1998. *Id.*, ¶ 9.

[5] Jaime Decl., Ex. A (tax returns showing auto insurance revenues); Martha Decl., ¶ 9.

[6] Jaime Decl., ¶ 10; *see* Ex. E (2006-2008 sales receipts for customers in San Bernardino, Riverside, Kern, Ventura and San Diego).

[7] *Id.*, ¶ 11, Ex. F (photos of storefront dated 1994, 2007, and 2014).

sign has changed somewhat over the years, it still stands and continues to advertise the mark.[8] Every one of the thousands of people who daily pass the Silvas' office continue to be exposed to the sign bearing the "VERONICA'S SERVICES" mark.[9] In short, since 1994, millions of actual and prospective customers driving on busy Van Nuys Blvd. have seen that sign and are familiar with the mark, and specifically associated that mark with the Silva's *auto insurance services* since they started offering those services in 1998.[10]

During the period between 2005 and 2008, the Silvas – besides using the mark on their fixed sign, their receipts and other documentation – advertised their services and mark in flyers, t-shirts, stationery, and calendars.[11] They also used print magazines and newspapers to advertise their mark.[12] And they also relied on word-of-mouth advertising and referrals from existing customers.[13] To advertise in these formats, the Silvas spent about $42,000 during that 2005- 2008 period (about $4,435 in 2005; $13,448 in 2007, and $24,339 in 2008).[14] Because of the Silvas' efforts to promote their mark, the "VERONICA'S SERVICES" mark was well-recognized as referring to the Silvas' insurance business.[15]

On June 6, 2008, the Silvas incorporated as Veronica's Services, Inc.[16] On June 27, 2008, they assigned all of the sole proprietorship's assets – including the "VERONICA'S SERVICES" common-law trademark – to Veronica's Services, Inc.[17] Veronica's, after being incorporated, continued selling insurance under the

---

[8] *Id.*

[9] *Id.* at ¶ 11.

[10] *Id.* at ¶ 13.

[11] Declaration of Jimmy Silva filed in Support of Opposition ("Jimmy Decl."), ¶ 4.

[12] *Id.* at ¶ 5.

[13] *Id.*

[14] *Id.*

[15] *Id.* at ¶ 6; Martha Decl., ¶ 11.

[16] Jaime Decl., at ¶ 14; Ex. G (Articles of Incorporation).

[17] Jaime Decl., at ¶ 15; Ex. H ("Agreement to Transfer Assets to Corporation"). Thus, Veronica's is a successor in interest to the sole proprietorship, and may rely on its predecessor's 1998 priority of use date for VERONICA'S SERVICES.

same "VERONICA'S SERVICES" mark.[18] During the period from 2008 to date, its revenues from selling auto insurance continued to increase (approximately $120,045 in 2009; $131,353 in 2010; $146,217 in 2011; and $166,321 in 2013).[19] Veronica's continued to serve its customer base throughout most of Southern California, including the Counties of Los Angeles, San Bernardino, Orange, Riverside, San Diego, Ventura, and Kern.[20]

From 2008 to the present date, Veronica's continued to advertise its "VERONICA'S SERVICES" mark to current and prospective customers. It continued to advertise in magazines and newspapers.[21] It also advertised through an online website at *www.veronicasservices.com*.[22] It distributed flyers, t-shirts, stationery, and calendars with its mark, and it also sent direct-mail advertisements to thousands of potential customers throughout Southern California.[23] Word-of-mouth advertising and referrals from customers continued to retain old business and develop new business.[24] Its advertising expenses to promote its mark also

---

[18] Jaime Decl. at ¶ 19. Veronica's obtained a separate broker's license in 2009, which has been renewed through 2015. *Id.*, Ex. I (Veronica's broker's licenses). VAIS continues to argue that Veronica's use of its mark was unlawful. As discussed extensively in Veronica's reply in support of its co-pending MSJ (Dkt. #55) and opposition to VAIS' *ex parte* application to file a sur-reply (Dkt. #64), Veronica's use of its mark was always lawful because either Jaime or Veronica's (or both) were licensed at all times. Further, Veronica's always substantially complied with DOI advertising regulations. Even if Veronica's was not in perfect technical compliance with DOI regulations, the McCarran Ferguson Act, 15 U.S.C. § 1012, precludes this Court from making a determination of regulatory compliance. Further still, VAIS failed to plead any violation of the Insurance Code or regulations in its Complaint, failed to timely supplement its initial disclosures in violation of Fed. R. Civ. Pro. 26(e), and failed to timely produce documents supporting its new, surprise theory of "unlawful use in commerce." As such, this Court should disregard VAIS' argument that Veronica's use was "unlawful."

[19] Martha Decl., ¶ 15; Ex. C (sales records from 2009-present).

[20] *Id.*; Jimmy Decl., ¶¶ 11-12, Exs. C, D (sales records for surrounding counties).

[21] *Id.* at ¶ 8, Ex. A (full page ad in *Pennysaver* magazine dated 2009, other print media advertisements, flyers, website printouts, and photos of promotional activities).

[22] *Id.* (website screenshot).

[23] *Id.* (samples of direct mail advertisements sent to numerous potential customers throughout Southern California).

[24] *Id.*, at ¶ 10.

continued (approximately $31,813 in 2009; $33,935 in 2010; $7,739 in 2011; $15,700 in 2012; and $19,994 in 2013).[25]

In sum, Veronica's used its VERONICA'S SERVICES mark – by itself and through its predecessor – continuously and exclusively since 1998, with its heaviest advertising and growth occurring between 2005 and the present. Between 2005 and the present *alone* (not counting the years 1998-2005, for which much of the Silvas' documentation of sales has been lost or destroyed), Veronica's revenues from selling insurance under the "VERONICA'S SERVICES" exceeded $1,000,000.[26] Similarly, its advertising of the mark cost it more than $150,000 between 2005 and the present.[27] Except for VAIS' unauthorized use of the "Veronica's" mark, Veronica's is unaware of any other person using the name "Veronica's" to sell insurance.[28] And VAIS identifies none.

Based on Veronica's continuous and exclusive use of the mark since 1998 – more than **16 years** – and except for VAIS' unauthorized use commencing in 2011 – consumers in Los Angeles County and the neighboring counties have come to recognize the "VERONICA'S SERVICES" mark refers to Veronica's.[29] Many of these customers, furthermore, are repeat customers[30] who thus recognize that Veronica's provides a distinct source of high quality insurance services.

### B. VAIS Infringes the VERONICA'S SERVICES Mark

Although Veronica's continuously used the "Veronica's" mark from 2005 (following the Silvas' use of the mark from 1998), VAIS nonetheless started to use

[25] *Id.*, at ¶ 9; Ex. B (samples of invoices from advertising vendors showing some expenses).

[26] Martha Decl., ¶ 19, Exs. A, C.

[27] Jimmy Decl., ¶ 14.

[28] Jaime Decl., ¶ 25.

[29] *Id.* at ¶ 26.

[30] *See, e.g.*, Ballesteros Decl., ¶ 4 (customer since 1998); Servin Decl., ¶ 4 (customer since 2002); Martinez Decl., ¶ 4 (customer since around 2001).

it without permission. Thus, during 2011 through 2014, VAIS opened at least thirteen auto insurance locations in Los Angeles and surrounding counties[31] using the virtually identical mark "Veronica's Insurance".

Although VAIS alleged in its Complaint it first used "VERONICA'S INSURANCE" for auto insurance in 2007,[32] discovery confirms that this allegation was false. VAIS' CEO, Gallardo, admitted during her deposition VAIS first used the mark to sell auto insurance in 2011.[33] Thus, VAIS is the junior (and infringing) user of the Veronica's mark.

Moreover, VAIS has even engaged in blatant and <u>exact</u> copying of that mark. In a clear example of exact, intentional copying, VAIS advertised as follows in a Los Angeles area newspaper in 2012[34]:

VAIS used <u>exactly</u> the same typestyle and stylized "V" design (with a horizontal line extending from the top of the "V") as Veronica's had developed and used for many years. Exemplars of Veronica's use of that mark in 2005 and 2008[35] are set forth below:

Veronica's Services

(Veronica's 2005 design mark)

(Veronica's 2008 design mark)

---

31 VAIS' Opposition to Veronica's co-pending motion, Dkt. # 62, p. 2, ln. 13.

32 Complaint, ¶ 8.

33 Gallardo Deposition, 46:2-6; 47:8-12; 107:7-11; 29:16-21; 176:8-16, Declaration of Paulo A. de Almeida filed herewith in support of Opposition ("de Almeida Decl."), Ex. A.

34 Jimmy Decl., ¶ 16, Ex. E (showing full advertisement).

35 *Id.*, ¶ 16.

The inference flowing from VAIS' exact copying of Veronica's typestyle and "V" design—together with its heavy advertising only a few miles from Veronica's office— is direct; VAIS is attempting to steal Veronica's goodwill and destroy its business.

Highlighting VAIS' intentions, VAIS even copied Veronica's advertising format. Since 2009, i.e., long before VAIS began its unauthorized use of Veronica's mark in 2011, Veronica's used the image of a dark-haired Latina woman in virtually all of its advertising.[36] VAIS, besides copying Veronica's logo and typestyle, has now adopted that advertising format. In sum, VAIS' copying efforts indicate VAIS wants to seize Veronica's consumer goodwill for itself, i.e., the "secondary meaning" which Veronica's has spent 16 years of hard work, money and advertising to develop.

Further, VAIS' junior use actually confuses consumers. After VAIS started using the "Veronica's" mark in 2011, confused customers have inundated Veronica's with complaints and inquiries because (at least, initially) they could not distinguish between the two companies.[37] Consumers who had been loyal Veronica's customers for years mistakenly believed VAIS was affiliated with Veronica's.[38] For example, one long time Veronica's customer since 2002 was approached by VAIS sales agents who tried to sell him insurance.[39] Mistakenly believing that the agents were from Veronica's, he informed them that he was already a Veronica's Services customer.[40] The agents gave him a business card

[36] *Id.*, ¶ 17, Ex. A (advertisements including dark-haired women, including a 2009 *Pennysaver* ad; 2009 date appears in very small font in lower right corner of ad).
[37] *Id.*, ¶ 19, Ex. F (consumer confusion logs and customer declarations signed under penalty of perjury).
[38] *Id.*
[39] Servin Decl., ¶¶ 7-9.
[40] *Id.*

showing the infringing "V" design, which he immediately recognized as being identical to Veronica's highly distinctive "V" or "arrow" design.[41]

Another long-time Veronica's customer since 2001 mistakenly assumed that Veronica's was "branching out" when he saw numerous VAIS advertisements and stores open over the last few years.[42] Yet another long-time Veronica's customer since ***1998*** actually walked into a VAIS' Sylmar office, mistakenly believing she was entering a Veronica's office.[43]

VAIS furthermore has intentionally induced such actual confusion. For example, in 2012, a Veronica's customer walked into a VAIS' office on Roscoe Blvd., requesting a price quote for an insurance policy (to compare with his current rate).[44] VAIS' representative asked the customer to sign a "form" to receive the quote.[45] Unknown to the customer, the form was a "Broker Change of Record Form" which would have changed the customer's insurance broker from Veronica's to VAIS.[46] The customer never authorized this change.[47]

Before VAIS started using the Veronica's mark in 2011, Veronica's had never experienced a single instance of consumer confusion.[48] Thus, it may be inferred that VAIS, the junior user of the mark, caused the confusion. Moreover, VAIS concedes such confusion exists; thus, it *admitted* in its Complaint such actual confusion:

> On information and belief, defendant's unlawful use of VERONICA'S SERVICES trademark has caused actual confusion amongst consumers and

---

[41] *Id.*
[42] Martinez Decl., ¶¶ 7-9.
[43] Jimmy Decl., Ex. F (reporting, "customer walked in [VAIS office] thought it was us [Veronica's]").
[44] Jimmy Decl., Ex. F. (confusion logs).
[45] *Id.*
[46] *Id.*
[47] *Id.*
[48] *See* Jimmy Decl., ¶ 19.

initial interest confusion as to the origin of their respective products and services.[49]

In sum, the inference arising from the foregoing confusion is direct: consumers recognized VERONICA'S SERVICES as a strong brand *before* they encountered VAIS. Thus, when they encountered VAIS, they immediately thought Veronica's was the true source of the services. The inference parallels the court's observation in *Levi Strauss & Co. v. Blue Bell, Inc.*, a "buyer cannot . . . be confused unless he is looking for *a label he recognizes* and picks up another in his confusion."[50]

The consumers' actual confusion indicates they recognized only one source for insurance using "Veronica's," i.e., the Silvas. Further, that confusion – caused by VAIS, the junior user – demonstrates the mark has a secondary meaning.

**C. VAIS Sued Veronica's Alleging a False Date of First Use**

After Veronica's complained to VAIS about its infringement, VAIS *sued Veronica's* for trademark infringement and unfair competition.[51] VAIS, in its Complaint, alleged it first used the Veronica's mark for auto insurance services in 2007.[52] VAIS' CEO, as noted above, has admitted this allegation is false; thus, she admitted at deposition VAIS first used the mark in 2011, not 2007.[53] Veronica's – having used VERONICA'S SERVICES since 1998 – counterclaimed for infringement against VAIS and its CEO, Gallardo.[54]

---

[49] Complaint, ¶ 13.

[50] *Levi Strauss & Co. v. Blue Bell, Inc.*, 778 F.2d 1352, 1359 (9th Cir. Cal. 1985) (emphasis added).

[51] VAIS has asserted claims of (1) federal registered trademark infringement based on its U.S. Reg. No. 4288275 for the mark VERONICA'S INSURANCE, registered on February 12, 2013; (2) false designation of origin; (3) California statutory unfair competition; (4) common law trademark infringement; and (5) common law unfair competition.

[52] Complaint, ¶ 8.

[53] Gallardo deposition, de Almeida, Decl., Ex. A.

[54] Veronica's counterclaims include (1) federal unfair competition, (2) California statutory unfair competition, and (3) common law service mark infringement against VAIS and Gallardo; and (4) cancellation of VAIS' federal trademark registration, all based on VAIS' junior (and thus infringing) use of Veronica's.

In sum, Veronica's prior use of the mark for about 16 years is sufficient to demonstrate its superior right in the mark. Thus, the Court should deny VAIS' Motion.

## III. VAIS IS NOT ENTITLED TO SUMMARY JUDGMENT

"Summary judgment is appropriate where the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show 'that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'"[55] Where, "the nonmoving party has the burden of proof at trial, the moving party need only point out 'that there is an absence of evidence to support the nonmoving party's case.'"[56] To withstand a properly supported motion, the nonmoving party who bears the burden of proof at trial must then come forward with evidence to support the essential elements of its claim.[57]

Veronica's has submitted sufficient evidence to demonstrate its mark is inherently distinctive or has acquired secondary meaning. At a minimum, Veronica's has proffered enough evidence to show a genuine dispute of material fact as to whether its mark has acquired secondary meaning. Accordingly, this court should deny VAIS' Motion.

## IV. VERONICA'S MARK IS INHERENTLY DISTINCTIVE

As the Supreme Court has explained: "An identifying mark is distinctive and is capable of being protected if it either (1) is inherently distinctive or (2) has acquired distinctiveness through secondary meaning." [58] In the case at bar, the Court need not analyze secondary meaning because VAIS has *admitted* the inherent distinctiveness of "Veronica's" for auto insurance in its complaint:

---

[55] *Ribot v. Farmers Ins. Group*, 2014 WL 2510883, *4 (C.D. Cal. Jun. 4, 2014) (*quoting* Fed.R.Civ.P. 56(a)).

[56] *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001) (emphasis added), citing *Celotex Corp. v. Catrett*, 477 U.S. at 325.

[57] *National Assn. of Gov't Employees v. City Pub. Serv. Bd.*, 40 F.3d 698, 712 (5th Cir. 1994) (citing *Celotex*, 477 U.S. at 321-23).

[58] *Two Pesos, Inc. v. Taco Cabana, Inc*., 505 U.S. 763, 769 (1992).

> The VAIS trademarks and designations [VERONICA'S INSURANCE and VERONICA'S AUTO INSURANCE SERVICES] *are inherently distinctive* . . . .[59]

These formal, judicial admissions conclusively establish the inherent distinctiveness of the "Veronica's" mark for selling auto insurance.[60]

VAIS' now seeks to disregard its admission in favor of simultaneously arguing both sides of the issue. While VAIS argues "Veronica's" is inherently distinctive and thus, protectable as a trademark for VAIS' sales of insurance,[61] it simultaneously argues Veronica's cannot have a protectable interest in the "Veronica's" mark because it is merely a "personal name."[62] This Court should reject that internally inconsistent argument. The marks "VERONICA'S SERVICES" and "VERONICA'S INSURANCE" are essentially identical. Because both parties agree that term is inherently distinctive for auto insurance, this Court should agree with the parties.

And consistent with the parties, the USPTO also agrees "Veronica's" is inherently distinctive for auto insurance. Otherwise, the PTO would have rejected VAIS' trademark application for "Veronica's Insurance" on the theory "Veronica's" was merely descriptive or a "personal name." Further, VAIS never supported its application with any evidence of acquired distinctiveness, which means that the USPTO did not issue registration based on a showing of secondary meaning; rather, the USPTO found that the mark was inherently distinctive and issued the

[59] Complaint, at ¶ 8 (emphasis added).

[60] *American Title Ins. Co. v. Lacelaw Corp*. 861 F.2d 224 (9th Cir. 1988) ("Factual assertions in pleadings . . . unless amended, are considered judicial admissions conclusively binding on the party who made them.").

[61] Motion at 12 ("Unlike VSI, Veronica's Insurance could allege in its Complaint that its VERONICA'S INSURANCE marks are *inherently distinctive* because it owns a federal trademark registration in International Class 36 for "insurance consulting in the field of automobile insurance," U.S. Registration No. 4,288,275. . . . The federal registration is also significant because a"[t]rademark registration serves as proof that a mark is either distinctive or has secondary meaning . . . .") (emphasis added).

[62] *Id.* (". . . there is simply no legal or factual basis for [Veronica's] to claim that its mark is inherently distinctive since it is merely a personal name with another descriptive word.")

registration on *that* basis. In short, the USPTO, in registering the mark *concluded that "Veronica's" was inherently distinctive*.[63] "The PTO's conclusion on whether a mark is descriptive is an important factor to consider in light of the PTO's specialized expertise."[64] Thus, like the USPTO, this Court may also infer that "Veronica's" is inherently distinctive.

Finally, VAIS cites Judge Posner's decision in *Peaceable Planet, Inc. v. Ty Inc.*[65] for the "personal name" rule, i.e., that sometimes personal names are not protectable absent a showing of secondary meaning. Based on that decision, VAIS argues this Court should not award "damages and profits for Veronica Gallardo's use of her own name as a trade name, and . . . to stop her from continuing to use her personal name as her trade name . . . ."[66] VAIS misses the mark. The personal name rule is not rigidly applied where the policies of the rule are not subserved. As Judge Posner explained,

> [t]reating the personal-name rule as a prohibition against ever using a personal name as a trademark (in the absence of secondary meaning) would

---

[63] VAIS repeatedly argues that it has trademark rights in Veronica's solely because it owns a registration but Veronica's does not. Motion at 11-12. However, the presumption of validity of the registration only extends to the services listed in the registration, namely, "Insurance ***consulting*** in the field of automobile insurance". *See* McCarthy § 19:48 (stating that "the prima facie and incontestable provisions of the Lanham Act apply only to the goods or services specified in the registration")(emphasis added); *see also Applied Info. Scis. Corp. v. eBay, Inc.*, 511 F.3d 966, 970, 971 (9th Cir. Cal. 2007) ([T]he scope of validity and the scope of relief for infringement are not coextensive. . . . [T]he *validity* of a registered mark extends only to the listed goods or services . . . .). Contrary to VAIS' argument, VAIS is not entitled to rely on the registration for any presumption of ownership or validity as to *auto insurance services* because *the mark is not registered for those services*. Without a presumption of validity as to auto insurance, like Veronica's, VAIS must prove valid, superior (i.e., prior) common-law rights in the mark for *auto insurance services*, which it cannot do because it is the junior user of the mark. Accordingly, the registration does not afford VAIS any presumptive trademark rights in Veronica's for *auto insurance services*.

[64] *GamerModz, LLC v. Golubev*, 2011 U.S. Dist. LEXIS 116608, * 30 (M.D. Fla. Aug. 3, 2011); *The Murphy Door Bed Co., Inc. v. Interior Sleep Systems, Inc.*, 874 F.2d 95, 101 (2nd Cir. 1989).

[65] 362 F.3d 986, 989 (7th Cir. 2004).

[66] Motion at 14.

> lead to absurd results, which is a good reason for hesitating to press a rule to its logical limit, its semantic outer bounds.[67]

Before recognizing a protectable trademark right in a personal name, courts consider a three-part rationale for requiring definitive proof of secondary meaning: (1) a natural reluctance against forbidding a person from using her name in her business; (2) some names are so common consumers will not be confused since they would not assume two products bearing the same name have the same source; and (3) preventing a person from using her name as a mark could deprive consumers of useful descriptive information.[68]

The facts of this case indicate none of those rationales apply. ***First***, "Veronica's" is neither Ms. Gallardo's first nor her last name—it is her *middle* name.[69] Since she has two other names to choose from – "Laura" and "Gallardo" – this Court should not be reluctant to bar her from using the name under which VAIS' competitor, i.e., Veronica's, has built a successful insurance business and created good will for 16 years.

***Second***, VAIS has failed to present any evidence the name "Veronica" is so common that consumers would assume two companies bearing the same name and providing the identical services would be unrelated. To the contrary, the name "Veronica's" is rare in the insurance business. Thus, until VAIS copied that name (and typestyle), Veronica's was the only insurance business in Southern California using that name.[70] Precisely *because* that name is rare in the insurance business, VAIS' use of that name caused actual confusion among consumers. By itself, that fact provides a compelling basis for protecting Veronica's long use of the mark

---

[67] *Peaceable Planet, supra,* 362 F.3d at 991 (7th Cir. 2004).

[68] *See* 2 McCarthy on Trademarks, § 13:3 citing Judge Posner's decision in *Peaceable Planet, supra,* 362 F.3d at 989 (7th Cir. 2004).

[69] de Almeida, Decl., ¶ 4, Ex. B (screenshot of DOI website showing license information for "GALLARDO LAURA VERONICA").

[70] Jimmy Decl., ¶ 13.

while protecting *consumers* from source confusion—the touchstone of trademark law.

***Third***, VAIS fails to present any evidence demonstrating that customers would be deprived of useful descriptive information were VAIS barred from also using the "Veronica's" mark. To the contrary, VAIS – the actual user of the mark – is a corporation, not a person. Corporations do not have a "personal name." Since "Veronica's" does not describe the corporation, consumers would not be "deprived" of any useful descriptive information were VAIS barred from continuing to use the mark.

In short, since VAIS' (not Gallardo's) use of the name is the focal point of this dispute, the "personal name" rule is inapplicable. Based on that factor, Veronica's need not show any secondary meaning to protect its mark. That is especially so because the parties and the USPTO already agree that the term "Veronica's" is inherently distinctive for auto insurance services.

## V. VERONICA'S MARK HAS ACQUIRED SECONDARY MEANING

Alternatively, VERONICA'S SERVICES has an established *secondary meaning* with consumers. "The basic element of secondary meaning is a mental recognition in buyers' and potential buyers' minds that products connected with the [mark] are associated with the same source."[71] Courts consider such factors as the following in determining whether secondary meaning is present: (1) whether actual purchasers of the product bearing the claimed mark associate the trademark with the producer; (2) the degree and manner of advertising under the claimed mark; (3) the length and manner of use of the claimed mark; (4) whether use of the claimed mark has been exclusive;[72] (5) evidence of actual confusion[73]; and (6) evidence of

[71] *Levi Strauss & Co. v. Blue Bell, Inc.*, 632 F.2d 817, 820 (9th Cir. 1980).
[72] *Levi Strauss supra*, 778 F.2d at 1358.
[73] *GamerModz, LLC v. Golubev*, 2011 U.S. Dist. LEXIS 116608, *34 (M.D. Fla. Aug. 3, 2011) ("[I]nstances of customer confusion, and intentional copying of the mark by the defendant, are relevant to a determination of secondary meaning.") citing *Caliber Automotive Liquidators,*
(continued…)

intentional copying [74] or exact copying.[75]

The court's decision in *GamerModz, LLC v. Golubev*[76] illustrates how these factors are applied to determine whether plaintiff's descriptive mark GAMERMODZ had acquired secondary meaning in the context of a summary judgment. In denying a defendant's motion for summary judgment, the court found that, "[a]s a result of the widespread exposure to the mark on the plaintiff's website, it may reasonably be inferred that relevant consumers have come to associate [the descriptive mark] GAMERMODZ with the plaintiff"[77], citing the following evidence:

- Plaintiff had continuously and exclusively used the GAMERMODZ mark since 2007;
- Plaintiff spent more than $100,000 in advertising;
- Nearly two million viewings of the plaintiff's advertisements on the internet, and more than 200,000 visits to its website at *GamerModz.com*;
- Customer confusion, based on an e-mail exchange between plaintiff and one customer confused between GamerModz and GamingModz; and
- Defendant's copying of the GamerModz mark.[78]

(…continued)
*Inc. v. Premier Chrysler. Jeep, Dodge, LLC*, 605 F.3d 931, 939 n. 36 (11th Cir. 2010); *Brooks Shoe Mfg. Co., Inc. v. Suave Shoe Corp.*, 716 F.2d 854, 860 (11th Cir. 1983).

[74] *GamerModz, supra,* 2011 U.S. Dist. LEXIS 116608, at *34, *see also Cartier, Inc. v. Four Star Jewelry Creations, Inc.*, 348 F. Supp. 2d 217, 243 (S.D.N.Y. 2004).

[75] *Transgo, Inc. v. Ajac Transmission Parts Corp.*, 768 F.2d 1001, 1015-16 (9th Cir. 1985) (naming the first four factors, then adding that "[p]roof of exact copying, without any opposing proof, can be sufficient to establish secondary meaning," since "[t]here is no logical reason for the precise copying save an attempt to realize upon a secondary meaning that is in existence"); *see also Vision Sports, Inc. v. Melville Corp.*, 888 F.2d 609, 615 (9th Cir. 1989) (proof of copying strongly supports an inference of secondary meaning).

[76] 2011 U.S. Dist. LEXIS 116608 (M.D. Fla. 2011).

[77] *Id.* at 39.

[78] *Id.* at 34-35.

In another decision, *Blumenthal Distrib. v. Exec. Chair, Inc.*,[79] the court found that a plaintiff's product design for its chairs had acquired secondary meaning based on the following evidence:

- Plaintiff had used the product design for seven years;
- Websites depicted the chairs and featured customer reviews (but no evidence of any advertising expenditures);
- Sales of 250,000 chairs generating 30 million dollars in revenue;
- Defendant's direct copying of plaintiffs' trade dress, which the court found to be "particularly compelling" evidence of secondary meaning.[80]

The evidence in the case at bar is even more compelling in demonstrating "VERONICA'S SERVICES" has acquired a secondary meaning:

1. <u>Purchasers Associate the Mark with Veronica's</u>

Veronica's has continuously used the mark for auto insurance since 1998 (<u>**16 years**</u>)[81] and generated over $1,000,000 in sales throughout Southern California during the period from 2005-present alone. [82] Veronica's has thousands of actual customers, many of whom are repeat customers.[83] Some have been repeat customers since 1998[84]. Its long-time customers frequently refer new customers to the business.[85] Veronica's customers recognize the Veronica's Services mark when they see it, and they know it points to Veronica's and its high quality services, not

[79] 2010 U.S. Dist. LEXIS 142193 (E.D.N.Y. 2010).
[80] *Id.*, *25-26.
[81] Jaime Decl., ¶¶ 6-26, Ex. C (Jaime Silva's auto insurance licenses dated 1998-present); Ex. F (photos of storefront showing Veronica's Services sign in 1994, 2007, 2014); Ballesteros Decl., ¶ 4 (customer since 1998); Servin Decl., ¶ 4 (customer since 2002); Martinez Decl., ¶ 4 (customer since around 2001); Cox Decl., ¶ 3-5 (business consultant who was not a customer, but referred her own clients and family members to Veronica's since 2001).
[82] Martha Decl., ¶ 19, Exs. A, C.
[83] Martha Decl., ¶ 19, Exs. A, C; Ballesteros Decl., ¶ 4 (customer since 1998); Servin Decl., ¶ 4 (customer since 2002); Martinez Decl., ¶ 4 (customer since around 2001).
[84] *See e.g.*, Ballesteros Decl., ¶ 4.
[85] *Id.*; Cox Decl., ¶¶ 3-5 (business consultant who frequently referred others—including her own clients and family members—to Veronica's since 2001 because she knows the company's great reputation and associates the mark with the business);

any other company.[86] In short, thousands of actual purchasers associate the VERONICA'S SERVICES mark with Veronica's.[87] This factor weighs heavily in favor of secondary meaning.

2. Degree and Manner of Advertising

Veronica's spent over $151,000 in advertising to publicly promote its mark.[88] This is significantly more than the $100,000 spent in *Gamermodz* which the court found to be sufficient to defeat the defendant's motion for summary judgment.[89] The court in *Blumenthal* did not even require evidence of advertising expenses.[90] Veronica's distributed, among other advertising, flyers, t-shirts, stationery, and calendars bearing the mark; and it also sent advertisements directly to potential customers through the mail.[91] It also used print advertising in magazines and

---

[86] *Id*. at ¶ 5; Servin Decl., ¶¶ 6,8 (recognizes the mark as identifying Veronica's, and immediately recognizes the "V" or "arrow" design logo); Ballesteros Decl., ¶ 5; Martinez Decl., ¶¶ 6, 8; Jaime Decl., ¶ 26; Jimmy Decl., ¶ 14, Ex. A (examples of Veronica's advertising efforts which helped create secondary meaning).

[87] VAIS argues that Veronica's use was "only in a small section of Los Angeles county", citing the "expert" report of Stephen Gaskin. Motion at 19. VAIS and its "expert" simply ignore Veronica's voluminous sales records and receipts showing that it has customers all over Los Angeles county, as well as in the counties of San Bernardino, Orange, Kern, Ventura, and San Diego. VAIS' conclusion is purportedly based on Veronica's own customer lists and sales data, but VAIS' "expert" has manipulated the data to reach this erroneous conclusion. For example, upon receiving Veronica's customer data, Mr. Gaskin "[n]oted missing data, and filled it in if the solution was obvious", "moved first names that were in the last names column to the first names column", "checked for exact duplicates" (and presumably deleted them), "checked for inexact duplicates" (and presumably deleted them), and "checked for couples, whom [he] treated as single customers" (couples should *not* be counted as "single customers", particularly if they are separated or divorced). Gaskin report, p.3. By "cleaning" the data, Mr. Gaskin appears to have deleted or discounted many of Veronica's customers (e.g., customers with common Latino names such as "Maria Gomez", which Mr. Gaskin apparently considered "duplicates"). These deletions created unreliable data containing fewer customers, which Mr. Gaskin used to create his own flawed geographic "maps" of Veronica's customer base. The maps are directly contradicted by Veronica's own sales records, including receipts. The fatal flaws of the report are discussed further in Veronica's Evidentiary Objections, filed concurrently herewith.

[88] Jimmy Decl., ¶ 14.

[89] 2011 U.S. Dist. LEXIS 116608 at *34-35.

[90] *Blumenthal*, *supra*, 2010 U.S. Dist. LEXIS 142193, at *24

[91] Jimmy Decl., ¶ 8, Ex. A (full page ad in *Pennysaver* magazine dated 2009, other print media advertisements, flyers, website printouts, and photos of promotional activities; samples of direct mail advertisements sent to numerous potential customers throughout Southern California).

newspapers.[92] This advertising was supplemented by word-of-mouth and referral advertising by Veronica's customers.[93] Thousands of actual and potential consumers passing its offices daily on Van Nuys Blvd. since 1994 (and since 1998, when Veronica's first provided auto insurance) saw its VERONICA'S SERVICES sign.[94]

Thus, since 1998, millions of consumers were exposed to the VERONICA'S SERVICES mark before VAIS started to also use it.[95] This sum is substantially more than the 200,000 website visits found to be sufficient in *GamerModz* to show secondary meaning *at least* for the purposes of defeating a motion for summary judgment. Accordingly, Veronica's marketing efforts[96] indicate it created a secondary meaning.

---

[92] *Id.*

[93] Jimmy Decl., ¶ 10. VAIS attempts to diminish the significance of word of mouth advertising, relying on *Pizzazz Pizza & Restaurant v. Taco Bell Corp*., 642 F.Supp. 88, 92 (S.D. Ohio 1986). In that case, a pizza maker relying chiefly on word of mouth advertising was unable to show secondary meaning in the term "PIZZAZZ". This case is a far cry from Pizzazz. Veronica's used word of mouth advertising to supplement other advertising, including, but not limited to distributing flyers, t-shirts, stationary, and printing advertisements in local newspapers and magazines, all over a period of 16 years.

[94] Jaime Decl., ¶ 11, Ex. F (photos of Veronica's Services sign in 1994, 2007, 2014).

[95] *Id.*

[96] Veronica's attempts to dissect Veronica's advertising efforts, arguing that some advertising should be discounted as "unlawful"; that part of its advertising consisted of gift-giving inside its store; that some is "merely word of mouth" advertising; that the advertising included tax and notary services; and that some of the advertising was displayed after VAIS used its mark in 2011. Motion at 15-17. However, Veronica's advertising was not unlawful (an issue briefed extensively in Veronica's Reply in support of its co-pending motion, Dkt. #55, and in its opposition to VAIS' ex parte application to file a sur-reply, Dkt. #64); Veronica's advertising by word of mouth and gift-giving, combined with its other efforts, actually *supports* a finding of secondary meaning; its joint advertising of insurance, tax and notary services actually *increases* consumer awareness of the mark by reaching a broader customer base; and moreover, VAIS' junior and infringing use simply does not detract from Veronica's substantially exclusive use of the mark. *See L.D. Kichler Co. v. Davoil, Inc.*, 192 F.3d 1349, 1352 (Fed. Cir. 1999)("[t]he five years of use [required for secondary meaning under the Lanham Act] does not have to be exclusive, but may be 'substantially' exclusive. This makes allowance for use by others which may be inconsequential or infringing and which therefore does not necessarily invalidate the [plaintiff's] claim."). Accordingly, the Court should not be persuaded by VAIS attempts to dissect Veronica's advertising and should consider it all as a whole.

3. Length and Manner of Use

Courts have found that 10, 8, and even 7 years of use, in combination with other evidence, is sufficient to establish secondary meaning.[97] Notably, the USPTO requires only ***5 years*** of continuous and exclusive use to establish a secondary meaning for descriptive marks and surnames.[98] In the case at bar, the Silvas have receipts and other documents showing they used the mark since 2005[99], but in fact they used the mark since 1998—as their own long-time customers will testify.[100] A **16 year** period of exclusive use is more than sufficient to demonstrate acquired distinctiveness since periods as short as seven years are sufficient to do so[101] (or even five years for the USPTO).

Moreover, even if this Court considers only the time Veronica's used the mark *before* VAIS first used the mark in 2011, Veronica's use since 1998 was still *13 years* before VAIS started using the mark in 2011. Accordingly, Veronica's long use of the mark indicates it established a secondary meaning.

4. Exclusivity of Use

Exclusivity of use of a mark is an important factor in analyzing secondary meaning.[102] Veronica's use was exclusive. It is unaware of anyone else using "Veronica's" to sell insurance other than VAIS.[103] Notably, VAIS identifies no

---

97 *Blumenthal, supra*, 2010 U.S. Dist. LEXIS 142193 at *23-24 ("While not an enduring period of time, seven years is sufficient for a product design to gain a foothold in the public's imagination."); *see also New York City Triathlon, LLC v. NYC Triathlon Club*, 704 F. Supp. 2d 305, 315 (S.D.N.Y. 2010) (finding ten years to be sufficient); *Cartier*, 348 F. Supp. 2d at 243 (eight years).

98 15 U.S.C. § 1052(f).

99 Their pre-2005 receipts and other documents have been lost or destroyed.

100 Jaime Decl., ¶ 6, Ex. C (broker licenses dated 1998-present), Ex. F (photos of storefront showing Veronica's Services sign in 1994, 2007, 2014); Ballesteros Decl., ¶ 4 (customer since 1998); Servin Decl., ¶ 4 (customer since 2002); Martinez Decl., ¶ 4 (customer since around 2001); Cox Decl., ¶ 3-4 (referred her own business clients and family members to Veronica's).

101 *Blumenthal, supra*, 2010 U.S. Dist. LEXIS 142193 at *23-24.

102 *Levi Strauss, supra*, 778 F.2d at 1358.

103 Jaime Decl., ¶ 24.

such user. Only Veronica's used the name in the insurance industry until VAIS began its infringement in 2011. Thus, before VAIS began using the mark, consumers recognized only one source of auto insurance using that mark, viz., Veronica's. Nor can VAIS take advantage of its infringement to detract from Veronica's substantially exclusive use, as inconsequential or even infringing uses do not invalidate a claim of secondary meaning.[104] Accordingly, Veronica's use was exclusive, which indicates the mark had an established secondary meaning.

5. Instances of Actual Confusion

Instances of customer confusion are relevant to determining whether a secondary meaning has been established.[105] As the court explained in *Levi Strauss*, a "buyer cannot . . . be confused unless he is looking for ***a label he recognizes*** and picks up another in his confusion. Ergo, a buyer who does not recognize plaintiff's 'mark' and does not distinguish it from any other, cannot be confused."[106] The case at bar involves extensive evidence of actual confusion. Numerous customers, including long-time Veronica's customers, encountered VAIS' infringing mark and then mistakenly assumed VAIS was affiliated with Veronica's.[107] Consumers were confused precisely because they were looking for a mark they recognized, i.e.,

---

[104] *See L.D. Kichler Co., supra*, 192 F.3d at 1352 (Fed. Cir. 1999)("[t]he five years of use [required for secondary meaning under the Lanham Act] does not have to be exclusive, but may be 'substantially' exclusive. This makes allowance for use by others which may be inconsequential or infringing and which therefore does not necessarily invalidate the [plaintiff's] claim."); *see also Yamaha Int'l Corp. supra*, 840 F.2d at 1583 (Fed. Cir. 1988) (affirming Trademark Trial and Appeal Board's rejection of section 2(f) opposition, in spite of evidence that four other companies made similar products prior to registration).

[105] *GamerModz, LLC v. Golubev, supra*, 2011 U.S. Dist. LEXIS 116608, at * 34, citing *Caliber Automotive Liquidators, supra*, 605 F.3d 931, 939 n. 36; *Brooks Shoe Mfg. Co., supra*, 716 F.2d at 860 (11th Cir. 1983).

[106] *Levi Strauss, supra*, 778 F.2d at 1359.

[107] Jimmy Decl., ¶ 19, Ex. F (confusion logs and sworn declarations from confused consumers); Servin Decl., ¶¶ 7-9 (approached by VAIS agents who tried to sell him insurance; stated he was already a Veronica's Services customer); Martinez Decl., ¶¶ 7-8 (saw VAIS advertisements and stores, believed Veronica's Services had "branched out").

VERONICA'S SERVICES.[108] At least one Veronica's customer *found herself inside a VAIS store* looking for Veronica's.[109] The evidence of actual confusion is not subject to dispute. That is so because VAIS has admitted actual customer confusion in its complaint.[110] At bottom, evidence of actual confusion—including VAIS' admission of such confusion—weighs heavily in favor of a finding of secondary meaning.

6. Evidence of Intentional or Exact Copying

As the courts have recognized: "[P]roof of intentional copying is probative evidence on the secondary meaning issue."[111] Intentional copying raises an inference that a mark is established in the marketplace, and that the infringer is trying to benefit from that association.[112] And the courts have also recognized, "[p]roof of exact copying, without any opposing proof, can be sufficient to establish secondary meaning," since "[t]here is no logical reason for the precise copying save an attempt to realize upon a secondary meaning that is in existence."[113]

Here, VAIS has exactly copied Veronica's logo and typestyle[114]:

(2012 VAIS advertisement)

(Veronica's 2005 and 2008 design marks)

---

[108] *Id.*

[109] Jimmy Decl., Ex. F (reporting, "customer walked in [VAIS office] thought it was us [Veronica's]").

[110] Complaint, at ¶ 13.

[111] *GamerModz, supra*, 2011 U.S. Dist. LEXIS 116608, at *45-46; *see also Cartier, supra*, 348 F. Supp. 2d at 243 (S.D.N.Y. 2004).

[112] *GamerModz, supra*, 2011 U.S. Dist. LEXIS 116608, *45-46, citing M. Kramer Mfg. Co., Inc. v. Andrews, 783 F.2d 421, 449 (4th Cir. 1986).

[113] *Transgo, Inc., supra*, 768 F.2d at 1015-16 (9th Cir. 1985) *see also Vision Sports, Inc, supra*, 888 F.2d 609, 615 (9th Cir. 1989) (proof of copying strongly supports an inference of secondary meaning).

[114] Jimmy Decl., ¶ 16, Ex. E; *compare* with Veronica's advertising, *id.* Ex. A.

Since at least 2009, Veronica's has also used dark-haired Latina women in its advertising.[115] Recently, VAIS also began using similar images of dark-haired women in its advertising. Like VAIS' use of the Veronica's mark and typestyle, using identical forms of advertising raises a single inference: VAIS is attempting to capitalize on Veronica's existing mark and consumer goodwill, i.e., the secondary meaning Veronica's has already established. VAIS' intentional copying is "particularly compelling" evidence of secondary meaning.[116]

Veronica's, through its extensive, continuous, and exclusive use of the "Veronica's" mark, has established the requisite "mental recognition in buyers' and potential buyers' minds that [services] connected with the [mark] are associated with [Veronica's]."[117] Were the mark not already well-recognized in Los Angeles, VAIS would never have sought to arrogate the mark for itself. VAIS' adoption of the *same mark*, in the *same geographic area*, using the *same typestyle* and the *same advertising format* highlights the value and recognition the mark. Furthermore, VAIS' effort to take the mark by force in this litigation demonstrates the valuable secondary meaning the mark has acquired.

## VI. VERONICA'S HAS PROVEN ITS COUNTERCLAIMS.

Veronica's has clearly established all elements of its counterclaims for federal unfair competition,[118] California statutory unfair competition[119] and common law service mark infringement[120] against VAIS and Gallardo. Specifically, Veronica's

---

[115] *Id.*, ¶ 17.

[116] *Blumenthal, supra*, 2010 U.S. Dist. LEXIS 142193, *25-26 (E.D.N.Y. 2010) (finding evidence of copying "particularly compelling" in showing secondary meaning).

[117] *Levi Strauss, supra*, 632 F.2d at 820.

[118] "To prevail on a [federal unfair competition] claim under Section 1125(a), a plaintiff must establish (1) ownership of a protectable trademark, (2) unauthorized use of that trademark by the defendant, (3) that the defendant's use was in connection with goods or services, (4) that the use was in interstate commerce, and (5) a likelihood of consumer confusion." *Tommy Bahama Group, Inc. v. Sexton*, 2009 WL 4673863, *11 (N.D. Cal. Dec. 3, 2009).

[119] As explained in Veronica's pending Motion, California statutory unfair competition claims are substantially congruent with federal unfair competition claims.

[120] Common law service mark infringement claims are also substantially congruent with

(continued…)

has demonstrated its priority of use of VERONICA'S SERVICES started in 1998; in contrast, VAIS admits it was the junior user, first using "Veronica's" in 2011.[121] Veronica's has also established the "Veronica's" mark is inherently distinctive; indeed, VAIS' admission of distinctiveness is buttressed by the USPTO's issuance of the "Veronica's Insurance" registration on the principal register—a register reserved *only* for marks that are inherently distinctive or that have acquired secondary meaning.

Even if the Court disagrees with the USPTO and the parties and thus finds "Veronica's" is not inherently distinctive for insurance services, Veronica's has nonetheless shown secondary meaning—*at least* in Los Angeles County[122] through its continuous and substantially exclusive use of that mark for 16 years.

In sum, Veronica's has demonstrated prior use and ownership of a valid, protectable mark. Veronica's has shown a likelihood of confusion, and even *actual* confusion.[123] Veronica's has shown that VAIS' use of the mark was both unauthorized[124] and in interstate commerce.[125] Because Veronica's has proven all

---

(…continued)
federal unfair competition claims.

[121] VAIS continues to argue that Laura Veronica Gallardo has been working in the insurance business generally since 2001 (using her sister's trademark "ADRIANA'S INSURANCE," not Veronica's); Motion at 1; that she incorporated VAIS in 2007; *id.*; and that VAIS received a DOI license to transact insurance in 2008. *Id*. These "facts" are irrelevant, because, as a matter of law, none of these activities can establish trademark rights. Trademark rights are established only by actual sales and advertising of services, not merely by incorporating or obtaining an insurance license. *Sengoku Works Ltd. v. RMC Int'l, Ltd.*, 96 F.3d 1217, 1219 (9th Cir. 1996)("it is not enough to have invented the mark first or even to have registered it first; the party claiming ownership must have been the first to actually use the mark in the sale of goods or services."). The Court should disregard these irrelevant purported facts, which are offered solely to obfuscate the parties' first use dates of 2005 and 2011, respectively. Nor should these facts be allowed to confuse a jury into believing that VAIS was first, when that is clearly not the case.

[122] Veronica's need only prove secondary meaning in its limited geographic market.

[123] VAIS has admitted both a likelihood of confusion and the existence of "actual confusion" in its complaint. Complaint, at ¶ 13, 16.

[124] Jaime Decl., ¶ 27.

[125] Complaint, ¶ 8 (VAIS' admission that it used the mark in interstate commerce).

elements of its claims, VAIS' Motion should be denied.[126]

## VII. CONCLUSION

Based on the foregoing, the Court should deny VAIS' Motion.

Dated: November 3, 2014

ADLER LAW GROUP
ERWIN E. ADLER

PATEL & ALMEIDA, P.C.
ALEX D. PATEL
PAULO A. DE ALMEIDA

By: /Paulo A. de Almeida/
Paulo A. de Almeida

Attorneys for Defendant and Counterclaimant,
VERONICA'S SERVICES, INC.

[126] For the same reasons, Veronica's co-pending motion should be granted.