1

2

3                                                             O

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9                    CENTRAL DISTRICT OF CALIFORNIA

10

11   VERONICA'S AUTO INSURANCE        )  Case No. EDCV 13-01327 DDP (DTBx)
     SERVICES, INC., a California     )
12   Corporation ,                    )  **ORDER DENYING DEFENDANT AND
                                      )  COUNTERCLAIMANT VERONICA'S
13                    Plaintiff,      )  SERVICES, INC.'S MOTION FOR
                                      )  PARTIAL SUMMARY JUDGMENT AND
14        v.                          )  DENYING PLAINTIFFS AND
                                      )  COUNTERDEFENDANTS VERONICA'S AUTO
15   VERONICA'S SERVICES, INC., a     )  INSURANCE SERVICES, INC. AND
     California corporation,          )  VERONICA GALLARDO'S MOTION FOR
16                                    )  PARTIAL SUMMARY JUDGMENT**
                     Defendant.       )
17   _____  )  [DKT. NOS. 40, 68]
                                      )
18

19        Presently before the Court are cross-motions for partial

20   summary judgment (the "Motions"). (Docket Nos. 40, 68.) For the

21   reasons stated in this order, the Motions are DENIED.

22   **I. Background**

23        This is a trademark action between two auto insurance

24   businesses located in Southern California. Plaintiff and

25   counterdefendant Veronica's Auto Insurance Services, Inc. ("VAIS")

26   is a Southern California business with multiple branches. Veronica

27   Gallardo obtained a personal license to transact insurance in

28   California on July 26, 2001. (Gallardo Decl., Docket No. 68-2, ¶

5.) On or about April 2, 2007, Ms. Gallardo incorporated a business in California called "Veronica's Auto Insurance Services, Inc." (Id. ¶ 7 & Exh. 1.) On November 25, 2008, VAIS received a license to transact insurance in California from the California Department of Insurance. (Id. ¶ 9 & Exh. 2.) Though VAIS originally pleaded a first use date of 2007 for the mark, it appears that the evidence shows that VAIS did not begin using the mark in commerce until September 2010, when VAIS began providing auto registration services under the names "Veronica's Registration Services" at Adriana's Insurance offices. (Id. ¶ 11.) In June 2011, VAIS opened its first office in Los Angeles County using the name "Veronica's Auto Insurance Services" and began using the mark to sell auto insurance. (Id. ¶ 11.)

Veronica Gallardo is the CEO and chief spokesperson for VAIS. (Id. ¶ 10.) VAIS currently has 13 locations throughout Southern California. (Id. ¶ 20.) On May 12, 2012, VAIS filed a service mark application with the U.S. Patent and Trademark Office ("USPTO"). (Id. ¶ 13.) On February 12, 2013, the USPTO issued a federal registration to VAIS for its "Veronica's Insurance" mark and design for "insurance consulting in the field of automobile insurance." (Id. ¶ 14 & Exh. 4.)

Defendant and counterclaimant Veronica's Services, Inc. ("VSI") is a small, family-run business. In 1990, husband and wife Jaime and Martha Silva began providing income tax preparation and notary public services at an office location in Pacoima, California as a sole proprietorship. (Jaime Silva Decl., Docket No. 41, ¶ 3.) In 1994, they erected a sign displaying the "Veronica's Services" mark on the roof of their business; though some changes have been

made to the appearance, the sign remains today. (Id. ¶¶ 5, 11.) In 1998, the Silvas expanded their business and began providing auto insurance services under the same Veronica's Services mark. (Id. ¶ 6 & Exh. B.) Jaime Silva was responsible for insurance sales and was individually licensed by the California Department of Insurance to sell auto insurance. (Id. ¶ 7 & Exh. C.) While operating as a sole proprietorship using the Veronica's Services mark, the Silvas sold thousands of auto insurance policies to customers in Southern California. (Id. ¶ 9.)

On June 6, 2008, the Silvas incorporated their business as "Veronica's Services, Inc." (Id. ¶ 14 & Exh. G.) On June 27, 2008, the Silvas transferred all of the assets of the sole proprietorship to VSI. (Id. ¶ 15 & Exh. H.) The Silvas argue that part of what was transferred to VSI were the common law trademark rights that the Silvas had acquired through use of the Veronica's Services mark in commerce since 1990, though VAIS disputes that any such rights had been acquired by the Silvas. VSI applied for an insurance broker's license with the California DOI, which was granted on March 10, 2009 and has been renewed through 2015. (Id. ¶ 16 & Exh. I.) VAIS argues that VSI was required by the DOI to use only the name "Veronica's Services Insurance Agency" in its entirety to refer to its business. (Ayala Decl., Docket No. 50-2, Exhs. 3 & 4.) Since incorporation, VSI has continued to advertise its services using the Veronica's Services mark. (Id. ¶ 19.)

VAIS filed this action against VSI, alleging causes of action for trademark infringement and false designation of origin under the Lanham Act and state law claims for unfair competition and trademark infringement. (See Complaint, Docket No. 1.) VSI filed

1  counterclaims against VAIS for declaratory relief, federal unfair
2  competition, state law trademark infringement and unfair
3  competition, and cancellation of federal trademark registration.
4  (Docket No. 8.) VSI also asserts claims against Veronica Gallardo
5  and Adriana's Insurance, Inc. (Id.) VSI now moves for partial
6  summary judgment as to all of VAIS's claims against VSI based on
7  VSI's prior use of the mark and as to most of VSI's claims against
8  VAIS. (Docket No. 40-1, p.7.) VAIS moves for summary judgment as to
9  VSI's counterclaims. (Docket No. 68.)

10 **II. Legal Standard**

11      Summary judgment is appropriate where the pleadings,
12 depositions, answers to interrogatories, and admissions on file,
13 together with the affidavits, if any, show "that there is no
14 genuine dispute as to any material fact and the movant is entitled
15 to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party
16 seeking summary judgment bears the initial burden of informing the
17 court of the basis for its motion and of identifying those portions
18 of the pleadings and discovery responses that demonstrate the
19 absence of a genuine issue of material fact. See Celotex Corp. v.
20 Catrett, 477 U.S. 317, 323 (1986). All reasonable inferences from
21 the evidence must be drawn in favor of the nonmoving party. See
22 Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 242 (1986). If the
23 moving party does not bear the burden of proof at trial, it is
24 entitled to summary judgment if it can demonstrate that "there is
25 an absence of evidence to support the nonmoving party's case."
26 Celotex, 477 U.S. at 323.

27      Once the moving party meets its burden, the burden shifts to
28 the nonmoving party opposing the motion, who must "set forth

specific facts showing that there is a genuine issue for trial."
<u>Anderson</u>, 477 U.S. at 256. Summary judgment is warranted if a party
"fails to make a showing sufficient to establish the existence of
an element essential to that party's case, and on which that party
will bear the burden of proof at trial." <u>Celotex</u>, 477 U.S. at 322.
A genuine issue exists if "the evidence is such that a reasonable
jury could return a verdict for the nonmoving party," and material
facts are those "that might affect the outcome of the suit under
the governing law." <u>Anderson</u>, 477 U.S. at 248. There is no genuine
issue of fact "[w]here the record taken as a whole could not lead a
rational trier of fact to find for the non-moving party."
<u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574,
587 (1986).

It is not the court's task "to scour the record in search of a
genuine issue of triable fact." <u>Keenan v. Allan</u>, 91 F.3d 1275, 1278
(9th Cir. 1996). Counsel has an obligation to lay out their support
clearly. <u>Carmen v. San Francisco Sch. Dist.</u>, 237 F.3d 1026, 1031
(9th Cir. 2001). The court "need not examine the entire file for
evidence establishing a genuine issue of fact, where the evidence
is not set forth in the opposition papers with adequate references
so that it could conveniently be found." <u>Id.</u>

**III. Discussion**

There are two primary issues raised by the parties in the
Motions. First, though VSI used the "Veronica's Services" mark to
sell insurance services before VAIS did, VSI does not have any
protectable rights in the mark unless VSI can establish that the
mark acquired secondary meaning prior to VAIS's use of the mark.
Second, VAIS argues that even if VSI could demonstrate that its

mark acquired secondary meaning, VSI does not have trademark rights in the mark because VSI's use of the mark was in violation of various insurance regulations.

In order to prevail on a Lanham Act claim for trademark infringement, a party must prove two basic elements: (1) the party owns a valid, protectable trademark, and (2) the other party's use of the mark is likely to cause consumer confusion. S. Cal. Darts Ass'n v. Zaffina, 762 F.3d 921, 929 (9th Cir. 2014); Applied Info. Sciences Corp. v. eBay, Inc., 511 F.3d 966, 969 (9th Cir. 2007). "The first of these basic elements is comprised of two sub-parts: the mark's protectability and the plaintiff's ownership of the mark." S. Cal. Darts, 762 F.3d at 929.

A. Protectability of VSI's Mark

Whether a mark is protectable depends upon whether the mark is distinctive. Zobmondo Enm't, LLC v. Falls Media, LLC, 602 F.3d 1108, 1113 (9th Cir. 2010). Suggestive, arbitrary, or fanciful marks are considered "inherently distinctive" and are automatically entitled to federal trademark protection. Id.; see also Two Pesos, Inc. v. Taco Cabana, Inc., 505 U.S. 763, 769 (1992). On the other hand, merely descriptive marks are not automatically deemed distinctive, but may become protectable if the mark acquires secondary meaning. Zobmondo, 602 F.3d at 1113; Two Pesos, 505 U.S. at 769. "Which category a mark belong in is a question of fact." Zobmondo, 602 F.3d at 1113; see also Lahoti v. VeriCheck, Inc., 586 F.3d 1190, 1195-96 (9th Cir. 2009).

1. *VAIS's "Inherently Distinctive" Allegation*

First, VSI attempts to rely on VAIS's allegation in its complaint, where VAIS claims that the designations "Veronica's

Insurance" and "Veronica's Auto Insurance Services" are inherently distinctive, to argue that VAIS has admitted that the marks at issue in this case are protectable. (See Complaint, Docket No. 1, ¶ 8.) However, that same paragraph of the pleadings goes on to say that the marks are "recognized by the relevant consuming public as plaintiff's marks," which is a fact that would go toward establishing secondary meaning and tend to contradict the assertion that the mark is "inherently distinctive," since secondary meaning need not be established for such marks.

Further, the fact that VAIS was granted a federal registration for the mark demonstrates only that VAIS may have acquired secondary meaning in the mark, a determination that says nothing about whether the mark previously had acquired secondary meaning as to VSI. Secondary meaning means that the mark denotes a particular source of the goods; the fact that a mark that has acquired secondary meaning as to one source says nothing about whether that same mark might have, for a different source at a different time, been sufficiently tied to that source to establish secondary meaning there. Therefore, the Court finds that in order for VSI to prevail on any of its affirmative claims, it must demonstrate that the mark acquired secondary meaning in the relevant market, where such secondary meaning denoted VSI as the source of the goods or services bearing the mark.

2. *VSI's Evidence of Secondary Meaning*

Personal names are generally entitled only to limited protection and are descriptive marks. See Paul Frank Indus., Inc. v. Sunich, 502 F.Supp.2d 1094, 1097-98 (C.D. Cal. 2007). In order to acquire trademark protection in a personal name, an individual

must either (1) "obtain a federal trademark registration" or (2) "prove that through usage, a personal name has acquired secondary meaning." <u>Miller v. Glenn Miller Productions, Inc.</u>, 454 F.3d 975, 991 (9th Cir. 2006); <u>see also</u> <u>E.J. Gallo Winery v. Gallo Cattle Co.</u>, 967 F.2d 1280, 1291 (9th Cir. 1992).

"To acquire ownership of a trademark it is not enough to have invented the mark first or even to have registered it first; the party claiming ownership must have been the first to actually use the mark in the sale of goods or services." <u>Sengoku Works Ltd. v. RMC Intern., Ltd.</u>, 96 F.3d 1217, 1219 (9th Cir. 1996). However, simple use in commerce is not enough where a mark is merely descriptive. <u>See</u> McCarthy on Trademarks and Unfair Competition § 16:34 (4th ed. 2014). In order to have a valid trademark claim in a descriptive mark, a plaintiff must establish that the mark acquired secondary meaning. "Secondary meaning must be shown to have existed prior to the date on which the accused infringer commenced using a confusingly similar trade dress." <u>Tone Bros., Inc. v. Sysco Corp.</u>, 28 F.3d 1192, 1201 (Fed. Cir. 1994) (citing <u>Co-Rect Prods., Inc. v. Marvy! Adver. Photography, Inc.</u>, 780 F.2d 1324, 1330 (8th Cir. 1985)).

Here, under the undisputed facts, it is clear that VSI used the mark "Veronica's Services" in the sale of auto insurance before VAIS began using the mark for the same purpose. Though the dates are somewhat confusing, VAIS did not begin using the mark in commerce to sell auto insurance until June 2011, by which time the Silvas had used the mark for other services beginning in 1990, for auto insurance services as a sole proprietorship in 1998, incorporated and transferred assets to VSI in 2008, and received a

license from the California DOI for VSI to sell auto insurance in
2009. The real question, then, is whether VSI can show that, prior
to June 2011, there existed "a mental recognition in buyers' and
potential buyers' minds that products connected with the [mark] are
associated with the same source." Levi Strauss & Co. v. Blue Bell,
Inc., 632 F.2d 817, 820 (9th Cir. 1980). Some factors that courts
consider when determining whether a mark has acquired secondary
meaning are: (1) whether actual purchasers of the product bearing
the mark associate the mark with the producer of the product; (2)
the degree and manner of advertising of the mark; (3) the length
and manner of use of the mark; and (4) whether the use of the mark
has been exclusive. Levi Strauss & Co. v. Blue Bell, Inc., 778 F.2d
1352, 1358 (9th Cir. 1985).

      VAIS argues that VSI's evidence does not support the
conclusion that VSI's mark acquired secondary meaning at any time,
let alone prior to VAIS beginning to use the mark. VAIS argues that
the geographic distribution of VSI's customers, the fact that many
of VSI's auto insurance customers were repeat customers who were
already familiar with VSI because they had used the business for
other services, the small amount spent on advertising, and the
small amount of sales indicate that VSI's mark never acquired
secondary meaning. In response, VSI provides some evidence of
consumer confusion. Further, VSI provides evidence that it has some
customers not just in the immediate vicinity of its Pacoima
location, but also throughout Los Angeles County and in surrounding
counties, such that customers do not patronize VSI solely because
of geographic convenience. Further, VSI argues that it could
establish secondary meaning in a relatively limited geographic area

near its business because thousands of local motorists pass by their store and sign on Van Nuys Boulevard each day, thereby associating the mark on the sign with the services offered; this would mean that VSI's rights in the mark are limited to a small area rather than that VSI owns no rights in the mark.

VSI's evidence of secondary meaning is not particularly strong and is subject to multiple interpretations as to its meaning. For example, the fact that most auto insurance purchasers live in a small geographic area could mean either that the mark has strong presence in that small area through advertising and mark recognition targeted at area resident or, alternatively, that customers visited the establishment to purchase auto insurance primarily or solely because of its geographic proximity to their homes or businesses. A reasonable jury could weigh the evidence, including expert reports, advertising revenues, and customer declarations regarding name recognition, and conclude either that the mark did acquire secondary meaning or that it did not. Therefore, the Court finds that there is an issue of fact as to whether VSI can establish that its mark acquired secondary meaning before June 2011.

### 3. *VSI's "Unlawful Use" of the Mark*

VAIS further argues, in opposition to VSI's Motion, that VSI cannot establish any rights in the mark because VSI's use violated various California insurance law provisions and regulations. "[U]se in commerce only creates trademark rights when the use is *lawful*." CreAgri, Inc. v. USANA Health Sciences, Inc., 474 F.3d 626, 630 (9th Cir. 2007). There are two rationales for this rule. "First, as a logical matter, to hold otherwise would be to put the government

10

1  in the anomalous position of extending the benefits of trademark
2  protection to a seller based upon actions the seller took in
3  violation of that government's own laws." Id. "Second, as a policy
4  matter, to give trademark priority to a seller who rushes to market
5  without taking care to carefully comply with the relevant
6  regulations would be to reward the hasty at the expense of the
7  diligent." Id.

8      However, "[t]here must be some nexus between ... use of [a]
9  mark and [an] alleged violation before it can be said that the
10 unlawfulness of [a] sale or shipment has resulted in [a mark's]
11 invalidity." Id. at 631 (quoting Satinine Societa in Nome
12 Collettivo Di S.A. E M. Usellini v. P.A.B. Produits Et Appareils De
13 Beaute, 209 U.S.P.Q. 958, 967 (1981)). Further, unlawful conduct
14 that is "immaterial," meaning that it is not "of such gravity and
15 significance that the usage [of the mark] ... as a matter of law,
16 [can] create no trademark rights," does not preclude trademark
17 protection. Id. at 633; see also S. Cal. Darts, 762 F.3d at 931-32.
18 "[A] case by case determination is preferable to a blanket policy
19 of finding every possible technical violation to result" in
20 trademark cancellation. General Mills, Inc. v. Health Valley Foods,
21 24 U.S.P.Q.2d 1270, 1274 (1992). Further, it appears unsettled
22 whether this unlawful use theory applies only to laws of the United
23 States, or whether it would apply equally to uses that violate
24 state laws. Compare W. Worldwide Enters. Group Inc. v. Qingdao
25 Brewery, 17 U.S.P.Q.2d 1137, 1141 (1990) and S. Cal. Darts, 762
26 F.3d at 931-32.

27

28

1    VAIS essentially alleges two kinds of insurance violations.[1]

2  First, VAIS argues that VSI could not have sold insurance under *any*

3  fictitious name prior to March 2009, since only Jaime Silva, and

4  not VSI, was licensed to sell insurance. Second, VAIS argues that

5  after March 2009, VSI was permitted to use the mark "Veronica's

6  Services Insurance Agency" only, in its entirety, and could not use

7  the mark "Veronica's Services" alone when referring to auto

8  insurance services.[2] VAIS argues that these amount to *per se*

9  violations of California insurance statutes and regulations. The

10  evidence supports a finding that VSI did use the Veronica's

11  Services mark to sell insurance in a way that it was not explicitly

12  authorized to do so. The question, then, is whether any such

13  technical violations are material and have a sufficient nexus to

14  the use of the mark to deprive VSI of any trademark protection on

15  that basis.

16    It is not clear from the evidence submitted that Jaime Silva

17  and/or VSI committed *per se* violations of the insurance code such

18  that this Court would preclude VSI from establishing any trademark

19  rights. First, although there is evidence that the license states

20  that "'Veronica's Services Insurance Agency' must be used for all

21  insurance business conducted in California" (see Docket No. 68-4,

---

23    [1]Additional violations are cited in the moving papers, but
24  they do not appear to be sufficiently related to the use of the
    mark to potentially result in a loss of trademark rights.

25    [2]The Court does not address the first argument in its
26  analysis. Regardless of any allegedly unlawful use by Jaime Silva
    prior to 2009, VSI could have used the mark after March 2009 but
27  before June 2011 and established trademark rights through that use
    alone. Therefore, the Court's analysis focuses on VAIS's argument
28  that VSI's use of the mark was unlawful because VSI was required to
    use only a particular form of the mark.

Exh. 39 to Jaime Silva Depo.), it is disputed that the purpose of
this requirement was "to avoid confusion with other licensees," as
VAIS contends it was. VSI contends that it has used "the legal
equivalent" of the required term at all times. (<u>See</u> Response to
SUF, Docket No. 71, ¶¶ 39-40.) The difference between using
"Veronica's Services," along with the word "insurance" to refer to
insurance services and "Veronica's Services Insurance Agency"
appears to be a distinction without a difference. Further, the
California DOI has not determined that VSI's use of the name
"Veronica's Services" was a sufficiently important violation that
it ought to act to enforce the insurance regulations. Though the
Court need not wait for the regulatory agency to act, here it is
sufficiently unclear that the violations at issue were "material"
rather than "technical" that the Court declines to find that VSI
cannot as a matter of law establish that it acquired trademark
rights. Therefore, the Court DENIES summary judgment on this basis.

   B. <u>VAIS's Claims of Ownership of the Mark</u>

   VAIS's federal registration of the marks is prima facie
evidence that it owns the marks. <u>Dep't of Parks & Recreation for
State of California v. Bazaar Del Mundo Inc.</u>, 448 F.3d 1118, 1124
(9th Cir. 2006). However, VSI may "rebut the presumption of
ownership with evidence establishing its own prior use in commerce
of the registered mark." <u>Id.</u>; see also <u>Sengoku Works Ltd. v. RMC
Intern., Ltd.</u>, 96 F.3d 1217, 1220 (9th Cir. 1996). Prior use is a
complete defense to trademark infringement, false designation of
origin, and unfair competition claims. There are three elements to
a prior use defense: "(1) the defendant adopted the mark without
actual or constructive knowledge of the plaintiff's use; (2) the

defendant used the mark before the plaintiff filed his or her trademark application; and (3) the defendant used the mark continuously after the plaintiff filed the application." Bell v. Harley-Davidson Motor Co., Inc., 2007 WL 935588, at *2 (S.D. Cal. 2007) (citing Quiksilver, Inc. v. Kymsta Corp., 466 F.3d 749, 761 (9th Cir. 2006)). "While the first use need not be extensive, the use must be bona fide and commercial in character" and "in such as manner that sufficiently associate[s] the marks with the ... provision of ... services." Dep't of Parks, 448 F.3d at 1125-26; see also Brookfield Commc'ns, Inc. v. West Coast Entm't Corp., 174 F.3d 1036, 1052 (9th Cir. 1999) (stating that the use must be "sufficiently public to identify or distinguish the marked goods in an appropriate segment of the public mind as those of the adopter of the mark").

It appears to be undisputed that VSI began using the designation "Veronica's Services" for its Pacoima business in 1990 and that it began offering auto insurance services under that mark in 1998. At that time, the Silvas were operating their business as a sole proprietorship, and Jaime Silva was licensed to sell insurance. VSI began using the mark, at the latest, in March 2009, well before VAIS ever used the mark. As a result, VSI clearly had no knowledge of VAIS's use of the mark and began using the mark well before VAIS sought federal registration of the mark. Finally, VSI has continuously used the mark at its Pacoima office location, at least dating back to 2009. VAIS has not provided any evidence that creates a genuine dispute as to whether VSI used the "Veronica's Services" mark to sell insurance as early as 1998 or whether VSI has operated continuously. However, although VSI

14

provides some evidence from which a jury could conclude that the mark became "sufficiently associated" with VSI's business to meet the requirements of the prior use defense,[3] on balance, the Court finds that there remain issues of fact as to the inferences to be drawn from that evidence such that summary judgment would be improper. As a result, the Court DENIES VSI's Motion in this regard.

**IV. Conclusion**

    For the foregoing reasons, the Motions are DENIED.

IT IS SO ORDERED.

Dated: December 15, 2014

DEAN D. PREGERSON
United States District Judge

---

[3]The Court notes that the showing required to establish a sufficient association to satisfy the prior use defense appears to be substantially lower than the showing required to establish secondary meaning in the mark, though the two analyses involve similar kinds of inquiry and evidence.